**CASE NO.: CV 22-3758-GW**

FILED

2023 MAR 20  AM 10:46

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

**IN THE UNITED DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**In re**: *Kimberly Martin-Bragg aka Kimberly Barbour,*
*Debtor,*

**IVAN RENE MOORE, PRO SE**
**Plaintiff/Creditor-Appellant**
**v.**
**KIMBERLY MARTIN-BRAGG AKA KIMBERLY BARBOUR; et al.,**

**Defendants-Appellees**

**HON. GEORGE H. WU, Judge Presiding**

**Case No. 2:22-cv-22-3758-GW**

**ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES
BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA
JUDGE BARRY RUSSEL
Case No. 2:16-bk-22878-BR**

**APPELLANT'S OBJECTION
TO TENTATIVE RULING**

**ORAL ARGUMENT REQUESTED**

**IVAN RENE MOORE**
**Plaintiff-Appellant, in Pro se**

 **ORIGINAL**

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THE ABOVE ENTITLED CAUSE:**

COMES NOW, Petitioner, Ivan Rene Moore, Respectfully submits this his Objections to the averments contained in this Court's **Tentative Ruling** issued and **or** entered on March 17, 2023 17, **[2:22-cv-03758-GW Dkt. 27],** and in support thereof show as follows:

## I.   Introduction

Appellant, Ivan Rene Moore, ("Appellant"), vehemently **objects** to this court's tentative ruling of 03/17/23. **[2:22-cv-03758-GW Dkt. 27] [Exhibit A],** on the grounds that this court wittingly or unwittingly misapplied the gravamen of Appellant's Bankruptcy Appeal which is premised on Bankruptcy Fraud and Fraud upon the court which was uncovered on **July 7th , 2021 during the Los Angeles Sheriff Raid of the Debtor's residence**. **[Exhibit F-I.].**

On or about June 16, 2017, Wells Fargo Bank seized certain personal properties that were stored in the 6150 Shenandoah residence to satisfy Appellant's purported indebtedness to Wells Fargo Bank., please see a true and correct copy of inventory and verification of Seized Items referenced herein, as **Exhibit B.**

1

The properties contained in **Exhibit B,** *Ibid,* were the subject of the vexatious litigant Designation and pre-filing Order of May 17, 2018, in *Moore v. Wells Fargo Bank, N.A., et.al.,* Case#: *17-cv-04828-ODW-GJS.*

Appellant filed Federal Civil Complaint in *17-cv-04828-ODW-GJS*, alleging *inter alia*, that Mr. Joshua Partington, an Officer of the Court, and the Kimberly Martin-Bragg aka Kimberly Barbour proffered  false Declaration of Verification to of the purported ownership of the property to seize the properties contained in **Exhibit B,** *Ibid.*

Thereafter,  Mr. Joshua Partington, Attorney for Wells Fargo Bank, and Defendant in *17-cv-04828-ODW-GJS*, brought vexatious litigant motion simply because Appellant was declared vexatious litigant in State Court.   Without considering the merit of Appellant's case, in *17-cv-04828-ODW-GJS*, Judge Otis D. Wright II, designated Appellant a vexatious litigant and a pre-filing to enjoin Appellant from litigating issue concerning the properties contained in **Exhibit B**. Ibid., and further unlawfully enjoined Appellant from litigating the Ownership of the real property commonly described as: 6150 Shenandoah property was not before him. *Please see* **Exhibit C**, a true and correct copy of the complaint filed in *17-cv-04828-ODW-GJS*, which demonstrates that the issue concerning determination of ownership of the 6150 Shenandoah was not before Judge Otis D. Wright II and Judge Otis D. Wright II order was without Subject matter Jurisdiction.

As this Court is aware, subject matter jurisdiction is never waived and may be brought at any time. The lack of subject matter jurisdiction cannot be waived and may be raised at any time, even for the first time on appeal. (*People v. Lara*, *supra*, 48 Cal.4th at p. 225; *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 372.). Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4),28 U.S.C.A., U.S.C.A. Const.

On November 8, 2013, months after a two-week jury trial in the California Superior Court in Los Angeles Superior Court ("LASC") case number: **BC480013,** Hon. Michelle Rosenblatt ordered the debtor and Appellee in the instant Appeal to return all the personal properties in the Shenandoah residence and the property in storage to Mr. Moore, Appellant in the instant Appeal. [*Please see*, **Exhibit D, at. p.5., ¶4.**].

In prior court proceedings, the Debtor and Appellee in the instant Appeal, proffered Declaration under the penalty of perjury and affirmed that she had given all the property which were the subject of Judge Rosenblatt's in LASC#: BC480103 to Wells Fargo Bank. [**Exhibit E,** Judge Fuji ruling dated 8/26/2020].

The California Superior Court Judge, Hon. Judge Fuji relied on Appellee's Martin Bragg Declaration and in court sworn testimony under oath that she had given **all** the property that were the subject of the State Court Order to Wells Fargo

3

Bank to satisfy Appellant's indebtedness to Wells Fargo Bank; notwithstanding that Judge Rosenblatt Ordered the Debtor/Appellee to return all the personal properties to Mr. Moore/Appellant. **[Exhibit D, at. p.5., ¶4.].**

Appellant contends that Appellee willfully lied on her Declaration because Appellee did not give all the personal property to Wells Fargo Bank and failed to disclose the personal property that belongs to Others in her Bankruptcy Petition and Schedule thereby committed Bankruptcy Fraud by concealment of those assets valued in the millions of dollars by Judge Rosenblatt and affirmed by the California Court of Appeal for the Second District.

In or about July 7, 2021, the Los Angeles County Sheriff RAID of the Debtor/Appellee's residence uncovered newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 or in time to allege Bankruptcy Fraud and fraud upon the court during the first filing of First Adversary proceeding Complaint or the Debtor which was previously and only to be re-opened by the Debtor. **[please see Exhibit F-I.].**

By misapplying the gravamen of Appellant's Bankruptcy Appeal, this Honorable court in essence ratified the false narratives of the Debtor and her lawyers who claimed that Appellant's instant appeal was about the property that was already litigated. The question beg asking is what was the disposition of the property that was already litigated?

Did said litigation inured to the benefit of Wells Fargo Bank or did it inure to the benefit of Appellee. As evidenced in **Exhibit B**, correct copy of inventory and verification of Seized Items by Wells Fargo Bank and the subject of the pre-filing order, those properties are not being litigated here. The personal properties have been sold by Wells Fargo Bank to satisfy its judgment against Appellant and most importantly, the remaining of the consumer debt has been discharged in Appellant's Bankruptcy in Bankruptcy Case #:**1:17-Bk.-12071-MB on June 5, 2020, therefore MOOT.**

However, Appellee unlawfully exercised dominion and control over the remaining properties including legal and persona documents that were not given to Wells Fargo bank and the properties in storage which is the subject of Hon. Judge Michelle Rosenblatt's order. **[Exhibit. D, at. p.5., ¶4.],** to wit, there is no pre-filing order precluding its litigation and the Debtor's obligation to return said personal properties per Court Order. Furthermore, the issue pertaining **[Exhibit. D, at. p.5., ¶4.],** were litigated on *adequate and independent state ground* for which the Constitution prohibits Federal Courts from interfering. The United States Constitution is sacredly obligatory to all, especial federal judicial officers as here.

Thus, Appellant's **Bankruptcy Fraud and Fraud Upon the Court**, is the central premise of this Bankruptcy Appeal.

Accordingly, in the interest of Justice, Appellant respectfully request that this court must not adopt its tentative ruling because to do so will undoubtedly deprive Appellant of his fundamental right to access the court.   Furthermore, if this court adopts its tentative ruling of March 17, 2023,**[2:22-cv-03758-GW  Dkt.  27],** Appellant will suffer irreparable harm.

Further, adoption of this court's tentative ruling *Ibid*, will amount to miscarriage of justice and deprivation of Appellant's Civil Rights and Appellant's rights that are secured under the United States Constitution and clearly established Federal laws.

### *The Gravamen of Appellant's Appeal*

Appellant will show that The Debtor/Appellee, Kimberly Martin-Bragg aka  Kimberly Barbour,  acting in concert with Appellees, Steven A. Schuman, Lee T. Dicker, Leornard, Law Office Of Peter M. Lively, and DICKER & SCHREIBER LLP, in Adversary **Proceeding case Number AD-22-01080-BR,** and **AD-22-01058-BR**, committed Bankruptcy fraud by failing to list asset on the appropriate bankruptcy schedule and petition  to prevent the creditors' properties from being considered by the Bankruptcy Court and the Bankruptcy Trustee; and knowingly made  false statement in the bankruptcy paperwork, and by proffering falsified financial documents  as evidence to support a credit request and misrepresented the debtor's worth in Kimberly Barbour's statements, petition and

schedules in order to qualify for a Chapter 7 bankruptcy proceeding in violation of **18 U.S.C. § 157**, **18 U.S.C. § 152**, and **11 U.S.C. § 521**.

Appellant will show, by clear and convincing evidence even with preponderance of evidence that, LAW OFFICE OF PETER M. LIVELY, a law firm of law corporation, STEVEN A. SCHUMAN, an Officer of the Court, LEE T. DICKER, an Officer of the Court, LEORNARD, DICKER & SCHREIBER, a law firm of law corporation, acting in concert with Kimberly Martin-Bragg aka Kimberly Barbour orchestrated unconscionable schemes to deceive this court and made misrepresentations directed at the judicial machinery in their schemes to deprive Appellant, IVAN RENE MOORE of his Constitutionally protected property interests and Appellant, IVAN RENE MOORE's rights to the State Court jury verdict which arises from the Debtor's intentional and malicious injury to Appellant person and property as defined under **11 U.S.C. § 523(a)(6).**

Rule 60(d)(3) provides that "[t]his rule does not limit a court's power to . . .set aside a judgment for fraud on the court" (emphasis added). Therefore, relief based on fraud on the court is not subject to the one-year time limit. Further, the Supreme Court has noted that relief from judgment for fraud on the court is "available to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998).

For remedy concerning unconscionable plan or scheme which is designed to improperly influence the court, *please see,* Abatti v. Commissioner, 859 F.2d 115, 118 (9th Cir.1988).

## I.   Prefatory Background of Appellant's Appeal

### *State Court Order, Hon. Michelle Rosenblatt Presiding*

On July 29, 2013, after a two- week trial in the California Superior Court for conversion, and trespass to chattel, of Appellant-Judgment Creditor, Ivan Rene Moore, ("Appellant" or "Appellant")'s personal property, the State Court jury unanimously returned ***Special Verdicts*** finding that Defendant, Kimberly Martin-Bragg intentionally caused injury to Plaintiff, Ivan Rene Moore and to various personal property of Ivan Rene Moore. The State Jury awarded **$5.6 Million** in damages including **$600,000.00** for lost income occasioned by the debtor's intentional and malicious injury to the person of Ivan Rene Moore, and property. **[Exhibit J.]**[1].

On November 8, 2013,  Hon. Michelle Rosenblatt of the California Superior Court reduced the judgment for intentional and malicious tort to $3.15 Million in damages and ordered the returned of personal property that were in the 6150

---

[1] Jury verdict arising from the Debtor's intentional and malicious injury to the person of Ivan Rene Moore and property.

Shenandoah Avenue, Los Angeles, California, and the properties in Storage to Appellant.

### Property in Storage

Appellant's Bankruptcy Appeal is premised on Judge, Hon. Judge Michelle Rosenblatt's Order in **LASC #: BC480013, [please see, [Exhibit. D, at. p.5., ¶4.],** which held that the Debtor is ordered to return personal property in storage to Appellant.  The State Court Judge's order that the Debtor and Appellee in the instant Appeal return said personal property in storage *Ibid*, is not within the scope of the Vexatious Litigant Order because the matter concerning the **property in storage** was not before Judge Otis D. Wright II, at the time of rendition of the pre-filing order in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: *17-cv-04828-ODW-GJS*.

As such, there is no pre-filing Order concerning the property in storage which were outside the Debtor's residence at the 6150 Shenandoah Avenue. Specifically, California Superior Court Judge Hon. Michelle Rosenblatt held:

> The Court grants Plaintiff IVAN RENE MOORE's request for return of property and Orders KIMBERLY MARTIN-BRAGG to return IVAN RENE MOOR'S clothing, shoes, kitchen equipment, personal property, piano, SSLK console, Masters, '71 Camaro, and personal legal documents consistent with the evidence presented at trial.  This order provides that IVAN RENE MOORE is entitled to the return of all of said property in KIMBERLY MARTIN-BRAGG's possession or control including that which is storage. KIMBERLY MARTIN-BRAGG, her agents and anyone acting on her behalf are ordered not to sell, give away, damage or keep from Ivan Rene Moore any of the property that is ordered to be returned.   KIMBERLY MARTIN-BRAGG, is ordered to have the property returned to IVAN RENE MOORE. **[Ex. D at. p.5., ¶4.].**

To the extent that LAW OFFICE OF PETER M. LIVELY, a law firm of law corporation, STEVEN A. SCHUMAN, an Officer of the Court, LEE T. DICKER, an Officer of the Court, LEORNARD, DICKER & SCHREIBER, are agents of the Debtor, KIMBERLY MARTIN-BRAGG aka Kimberly Barbour or acting on her behalf, are in violation of the California Superior Court Order. **[Exibit D, at. p.5., ¶4.].**

On or about May 11, 2015, the United States District Court for the Eastern District of Wisconsin entered an Amended Judgment ("Judgment") in favor of Judgment Creditor, Wells Fargo Bank, N.A. ("Wells Fargo" or "Bank"), and as against Ivan Rene Moore, Rufftown Entertainment Group, Inc., Radio Multi Media, Inc., and Rene Moore Music, Inc. (collectively, the "Judgment Debtors"). These corporations were owned by Appellant. The Judgment against Judgement Debtors was for the sum of $7,106,037.28. Id. Additionally, the Judgment provides that Wells Fargo "may replevin the intangible property, personal property, royalties, profits and other collateral […]." Id.

**Previously litigated personal property**

On or about 06/16/17 Wells Fargo Bank replevin the personal properties identified in the property seized. **[2:17-cv-02312-VAP-JEM Dkt.37 at. pp. 9-29.].** The Replevin personal properties were the personal properties that were in the 6150

Shenandoah residence that were seized to satisfy Wells Fargo's debt.   Furthermore, said personal properties **[2:17-cv-02312-VAP-JEM Dkt.37 at. pp. 9-29.]** were the personal properties that were adjudicated and the subject of Judge Otis D. Wright II, pre-filing order in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: *17-cv-04828-ODW-GJS*.

Rather than comply with the State Court's Order **[Exhibit D at. p.5., ¶4.]**, Kimberly Martin-Bragg aka Kimberly Barbour gave the personal properties  that were ordered to Mr. Moore/Appellant, to Wells Fargo Bank. **[see, 2:17-cv-02312- VAP-JEM Dkt.37 at. pp. 9-29.].[Exhibit B,** *list of inventories of item sized to satisfy Appellant's indebtedness to Wells Fargo Bank***.].**

Because the personal properties were given to Wells Fargo Bank, through use of knowing False Declaration by Kimberly Martin-Bragg aka Kimberly Barbour and Mr. Joshua K. Partington Attorneys for Judgment Creditor, Wells Fargo Bank, N.A., Appellant instituted the case in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: *17-cv-04828-ODW-GJS* for *inter alia*, fraud upon the court.   To subvert the central issues in Appellant's complaint, Mr. Joshua K. Partington, who also was a Defendant in the case *Ibid,* brought a vexatious litigant designation motion simply because Appellant was declared a vexatious litigant in state court in unrelated matter, and not because Appellant's claims lacked merit.

11

Consequently, on May 17, 2018, Judge Otis D. Wright II, designated Appellant a vexatious litigant and issued a pre-filing order as an injunction primarily to protect Mr. Partington, Wells Fargo's Attorney and Wells Fargo Bank, N.A.  It suffices to say that Judge Otis D. Wright II, unlawfully declared Mr. Moore a vexatious litigant for trying to litigate the unlawful taking of the Moore family, his and others own personal properties and the properties which were subject of bailment agreement as well as property which were on loan to Mr. Moore by various third parties, the subject of the California Superior Court Judge, **Hon. Michelle Rosenblatt's Order of November 8, 2013**.  Further, notwithstanding that Judge Otis D. Wright II, also allowed Mr. Moore to pursue state law claims, **[see, 2:17-cv-04828-ODW-GJS – Dkt. 35 at. p.4., Line 18]**, Judge Otis D. Wright II, issued a pre-filing order against Appellant/Mr. Moore stating *inter alia*,  as follows:

> Any case-initiating pleading submitted by [Moore] must be screened to determine if does any of the following: seeks to raise any of the claims alleged in this action; attacks, seeks to vacate, void or expunge, or otherwise seeks to challenge in any way – whether directly or indirectly – Wells Fargo's $7.1 million judgment lien or Wells Fargo's right to levy and sell personal property of Moore and the other Judgment Debtors; or seeks to litigate ownership of 6150 Shenandoah Avenue, Los Angeles, California 90065 ("Shenandoah Residence") or the personal property at the Shenandoah Residence. **[2:17-cv-04828-ODW-GJS Dkt. 35].**

Not only is Judge Otis D. Wright II's Order *Ibid*, is unduly overbroad, it failed to give reasonable notice as to what is prohibited.  For example, the Order Ibid, did not require Appellant to comply with  a pre-filing before filing Bankruptcy Appeal.

12

Further, the Order *Ibid*, is at odds with Judge Otis D. Wright II's order which states that the state claims action was dismissed without prejudice. **[2:17-cv-04828-ODW-GJS Dkt. 35 at. p.4., line 18]**;  which means that Mr. Moore was and is free to pursue the State law claims without any pre-filing injunction.  Furthermore, pre-filing order did not require that Appellant file a pre-filing order before filing **Bankruptcy Appeal or before filing Adversary Proceeding in the United States Bankruptcy Court.**

### *The 6150 Shenandoah Avenue, Los Angeles, California 90065 ("Shenandoah Residence") and Lack of Subject Matter Jurisdiction*

****Please, Let it be known that, Appellant is in no way re-litigating the ownership of the Shenandoah real property or claims in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: *17-cv-04828-ODW-GJS*, as that claimed has been foreclosed and discharged in Appellant's own Bankruptcy and now **MOOT!**; however, Appellant only reference this cases *Ibid*, to inform this court about some of pertinent background leading up to the instant Appeal. ****

That being said, at no time did Mr. Moore seek to litigate ownership of 6150 Shenandoah Avenue, Los Angeles, California 90065 ("Shenandoah Residence") in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: *17-cv-04828-ODW-GJS*.

There was no complaint filed by Mr. Moore seeking determination of the ownership of the Shenandoah Residence in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: *17-cv-04828-ODW-GJS*.

Because the case concerning the ownership of the 6150 Shenandoah residence was not before Judge Otis D. Wright II at the time of rendition of the court's order enjoining Mr. Moore from seeking to litigate the ownership of 6150 Shenandoah Avenue, Los Angeles, California 90065 ("Shenandoah Residence"), Judge Otis D. Wright II Order was without Subject Matter Jurisdiction therefore **VOID**. ***The Court's Lack of Subject Matter Jurisdiction is never waived and may brought at any time.*** And because Judge Otis D. Wright II lacked subject matter jurisdiction at the time of rendition, Judge Otis D. Wright II's injunction regarding litigation of ownership of the 6150 Shenandoah Avenue, Los Angeles, California 90065 real property is **VOID** as delineated [infra].

A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." *Ex parte Seidel*, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001), *Ex parte Spaulding*, 687 S.W.2d at 745 (Teague, J.,concuning). The law is well-settled that a void order or judgement is void even before reversal", *Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348,41 S. Ct. 116 (1920) "Courts are constituted by authority and they cannot go beyond that

power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities; they are not voidable, but simply void, and this even prior to reversal." Williamson v. Berry, 8 How. 945, 540 12 L. Ed. 1170, 1189 (1850). It has also been held that" It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside, as it may be impeached in any action direct or, collateral.' *Holder v. Scott*, 396 S.W.2d 906, (Tex.Civ.App., Texarkana, 1965, writ ref., n.r.e.).

A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. It is clear and well established law that a void order can be challenged in any court", *Old Wayne Mut. L. ASSOC. v. Mcdonough*, 204 U. S. 8,27 S. Ct. 236 (1907). Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4).

On April 26, 2022, the Bankruptcy Court, Judge Barry Russell also made a finding of facts and conclusion of Law for the First Time concerning the Discharge of Appellant's $3.15 Million Dollars arising from debtor's debt "for willful and malicious injury to his person and property because Section 523(a)(6) did so without addressing whether the Bankruptcy court also discharged the personal property that were the subject of the State Court's jury verdict and that were ordered returned to Appellant by the State Court Judge, Hon. Judge Michelle Rosenblatt.

Case law provides that discharge for intentional and malicious injuries as provided under 11 U.S.C § 523(a)(6) is self-effectuating, "mean[ing] that no action is necessary by the creditor or the court for them to be excepted from discharge." *Please see, In re Mitchell*, 418 B.R. 282, 286 (BAP 8th Cir. 2009); and nothing more for the Bankruptcy court to do but to give Full Faith and Credit pursuant to Article IV, Section 1 of The Full Faith and Credit Clause, which requires that all states' decisions, public records, and rulings be honored in all the other United States Courts.   Under current law, all courts in the United States—including federal courts—must treat a state court judgment with the same respect that it would receive in the courts of the rendering state. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). *See also* Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982).

**On May 20, 2021**, pursuant to Code Civil Procedure, section 514.030, the California Superior Court for Los Angeles County issues a Civil Writ commanding the Sherriff or any Marshall of the County of Los Angeles to levy upon and retain in their custody until released or sold.   The Writ specifically commanded the Sherriff or any Marshall in Los Angeles County to enter 6150 Shenandoah Avenue, Los Angeles California 90056 and 6160 Shenandoah Avenue, Los Angeles California 90056 and take possession of the described property or some part of it.

//

//

The Writ also provides that the Sheriff or Marshall of the County of Los Angeles shall use reasonable forcible entry to enter into the private place listed as : 6150 Shenandoah Avenue, Los Angeles California 90056 and 6160 Shenandoah Avenue, Los Angeles California 90056 for the purpose of levying on the personal property subject to the writ of Possession..

On July 7, 2021, the Sheriff of the County of Los Angeles executed the Writ (Exhibit A) and discovered many personal properties of Appellant and others that were concealed in the garage at 6150 Shenandoah Avenue, Los Angeles California 90056.  Please see, *Exhibits F-I,, respectively; true and correct copies picture of Sheriff's Raid on July 7, 2021).*

On July 7, 2021, during the Sheriff of the County of Los Angeles raid on the Debtor's residence at 6150 Shenandoah Avenue, Los Angeles California 90056, the Sheriff and Appellant discovered several personal properties including the documents that the Debtor asked Appellant to produce by way of Discovery and which the debtor concealed and failed to disclose in her Bankruptcy Schedule. Appellant further discovered for the first time that the Debtor/Defendant, KIMBERLY BARBOUR,  acting in concert with STEVEN A. SCHUMAN, LEE T. DICKER, LAW OFFICE OF PETER M. LIVELY, and LEORNARD, DICKER & SCHREIBER LLP, orchestrated an unconscionable plan or scheme which was designed to improperly influence the Bankruptcy court in its decision by

17

intentionally, willfully, knowingly and purposefully under-reported Kimberly Martin-Bragg aka Kimberly Barbour's income in her statements and schedules in order to qualify for a Chapter 7 bankruptcy proceeding.

On July 7, 2021, Appellant further discovered that the Debtor on advice of STEVEN A. SCHUMAN, LEE T. DICKER, LEORNARD, LAW OFFICE OF PETER M. LIVELY, and DICKER & SCHREIBER LLP, committed bankruptcy Fraud and fraud upon the court by failing to list an asset on the appropriate bankruptcy schedule to prevent the creditor's property from being considered by the Bankruptcy Court and the Bankruptcy Trustee; and knowingly made false statement in the bankruptcy paperwork, and by proffering falsified financial documents as evidence to support a credit request and misrepresented the debtor's worth in Kimberly Barbour's statements and schedules in order to qualify for a Chapter 7 bankruptcy proceeding.

Additionally, during the Los Angeles Sheriff's raid of July 7th, 2021, Appellant discovered *inter alia*, for the first time that in the course of the Debtor's Bankruptcy, Steven A. Schuman, an Officer of the Court, Lee T. Dicker, and Officer of the Court, **LEORNARD, DICKER & SCHREIBER LLP**, a law firm or law Corporation, acting in concert with the Debtor, Kimberly Barbour intentionally filed false or incomplete forms to conceal the ***1971 Camaro other personal property*** and the personal and legal documents of Appellant that were the

18

subject of the Discovery requests that were in exclusive dominion and control of the Debtor, Kimberly Martin-Bragg aka Kimberly Barbour.

During the Los Angeles County Sheriff's raid of the Debtor residence on July 7, 2021, it was further discovered that the Debtor acting in concert with Debtor's Attorneys, Steven A. Schuman, Lee T. Dicker, Leornard, Law Office Of Peter M. Lively, Dicker & Schreiber LLP, knowingly and intentionally committed fraudulent act by failing to list an asset on the appropriate bankruptcy schedule to prevent the creditor's property from being considered by the Bankruptcy Court and the Bankruptcy Trustee.   Debtor's Attorneys, Steven A. Schuman, Lee T. Dicker, Leornard, Law Office Of Peter M. Lively, Dicker & Schreiber LLP who authored this Appellee's Answering Brief, knowingly made  false statement in the bankruptcy paperwork, falsified financial documents used to support a credit request and misrepresented the debtor's worth in Kimberly Barbour's statements and schedules in order to qualify for a Chapter 7 bankruptcy proceeding in violation of **18 U.S.C. § 157, 18 U.S.C. § 152**, and **11 U.S.C. § 521**. **[please see, Adversary Case Number: 2:22-ap-01080-BR.,  Bankr. Dkt. 14.].**

Accordingly, because Appellant's Appeal is premised on Bankruptcy Fraud and Fraud Upon the and because Appeal is not about prior litigation concerning personal property which Wells Fargo Bank had already sold to satisfy its Judgment,

and because Wells Fargo Bank is not a party within this Appeal, the Court's tentative

ruling of March 17, 2023 should not be adopted in the interest of justice.

Furthermore, Appellant/Appellant contends that, in the event the court deem

Appellant's causes of action are not adequately pled, Appellant respectfully request

that the court grant leave to amend the complaint consistent with Fed. Rule. Civ. P.

Rule 15(a)(2) as justice so requires.

## II.    Argument

### A. The present adversary proceeding raised essentially the same factual allegations and issues which were decided against the Appellant in the December 9, 2016 Ruling

In its Tentative Ruling, this Court held that:

> Said dismissal was premised on the facts that: (1) Appellant had previously initiated an adversary proceeding which was decided against him by the Bankruptcy Court (the "December 9, 2016 Ruling") and an appeal from that ruling was dismissed by the District Court; and (2) the present adversary proceeding raised essentially the same factual allegations and issues which were decided against the Appellant in the December 9, 2016 Ruling. See Findings of Fact and Conclusions of Law Dismissing March 1, 2022 Adversary Proceeding with Prejudice ("May 20, 2022 Findings/Conclusions"), ECF No. 2 at pages 10-15 of 19. As noted in the May 20, 2022 Findings and Conclusions, Appellant has previously initiated a number of adversary proceedings in Appellee's bankruptcy which have all have been dismissed. Id. **[2:22-cv-03758-GW Dkt. 27 at. p. 2, ¶ 1.].**

Appellant respectfully Objects to the averment of the tentative ruling Ibid, and

request that this court should not adopt the statement Ibid on the grounds the

statement that "the present adversary proceeding raised essentially the same factual

20

allegations and issues which were decided against the Appellant in the December 9, 2016 Ruling, **[2:22-cv-03758-GW Dkt. 27 at. p. 2, ¶ 1.]** is not supported by the record for the following reasons.

First the case Adversary Complaint dismissal of December 9, 2016 Ruling, was not adjudicated on the merits and has no preclusive effect under federal law or state law.  As the State Court Supervising Judge Honorable Judge Honorable Judge David J. Cowen of Department 1, (one) of the California Superior Court in Los Angeles held on December 21, 2021:

> The Bankruptcy court "dismiss[ed] the adversary proceeding with prejudice due to [Moore's] failure to pay the sanctions" of $13,000 due under sanctions order, without addressing Moore's arguments under Section 523.  (**Exhibit K at. p.4.**).

Ordinary in some circumstances, dismissal with prejudice may determination of the merit, but not under the circumstance where the dismissal was for failure to pay sanction for failure to produce a document that the Bankruptcy Court was not in possession of Appellant but in the possession of the Debtor and Appellee because the Debtor and Appellee refused to comply with court which ordered her to return the document to Mr. Moore/Appellant.  **[*Please see,* Exhibit. D, at. p.5., ¶4.].**

Furthermore, on December 21, 2021, Honorable Judge J. Cowan, a Supervising Judge for the California Superior Court in and For Los Angeles County held that:

Given that the Final Judgment followed a jury verdict finding Bragg liable for conversion and trespass to chattels in the amount of $3.15 million based on allegations that Bragg took Moore's property after evicting him, the Final Judgment may represent a debt for Bragg's "willful and malicious injury…to the property of another entity",   (11 U.S.C. sec. 523(a)(6).  **(Exhibit K at. p.4., ¶ 1).**

Honorable Judge Honorable Judge David J. Cowen of Department 1, (one) of the

California Superior Court in Los Angeles  further held that:

There is no evidence that any judge has yet addressed whether the Final Judgment falls under Section 523(a)(6). **(Exhibit K at. p.4.).**

Additionally, the facts uncovered during the Los Angeles County Sherriff RAID of

the Debtor's residence **Exhibits F-I,** were not available in 2016 and because the

newly discovered evidence in or about July 7, 2021, which by due diligence could

not have been discovered in time to move allege Bankruptcy Fraud,

misrepresentation, or misconduct Appellee; as well as the circumstances under

which a judgment is void.

On July 7, 2021, the Sheriff of the County of Los Angeles executed the Writ

it was discovered that many personal properties of Appellant and others that were

concealed in the garage at 6150 Shenandoah Avenue, Los Angeles California 90056.

Please see, *Exhibits F-I,, respectively; true and correct copies picture of Sheriff's*

*Raid on July 7, 2021).*     Appellee had proffered declaration under the penalty of

perjury that she had given all of the property which were the subject of Wells Fargo

Replevin judgment and the subject of this Court's pre-filing order to Wells Fargo Bank.  **[Exhibit E.].**

Further, on July 7, 2021, during the Sheriff of the County of Los Angeles raid on the Debtor's residence at 6150 Shenandoah Avenue, Los Angeles California 90056, the Sheriff discovered several personal properties including the documents that the Debtor asked Appellant to produce by way of Discovery and which the debtor concealed and failed to disclose in her Bankruptcy Schedule.  Said document formed the basis of dismissal of Appellant's Adversary proceeding for failure to sanction for not producing the same document that was uncovered on July 7, 2021.

On July 7, 2021, Appellant further discovered for the first time that the Debtor/Defendant, KIMBERLY BARBOUR,  acting in concert with Steven A. Schuman, Lee T. Dicker, Law Office Of Peter M. Lively, And Leornard, Dicker & Schreiber LLP, orchestrated an unconscionable plan or scheme which was designed to improperly influence the Bankruptcy court in its decision by intentionally, willfully, knowingly and purposefully under-reported Kimberly Martin-Bragg aka Kimberly Barbour's  income in her statements and schedules in order to qualify for a Chapter 7 bankruptcy proceeding.  Further it discovered that Appellee and her Attorneys failed to list an asset on the appropriate bankruptcy schedule to prevent the creditor's property from being considered by the Bankruptcy Court and the Bankruptcy Trustee; and knowingly made  false statement in the bankruptcy

paperwork, and by proffering falsified financial documents as evidence to support a credit request and misrepresented the debtor's worth in Kimberly Barbour's statements and schedules in order to qualify for a Chapter 7 bankruptcy proceeding.

Additionally, during the Los Angeles Sheriff's raid of July 7, 2021, Appellant discovered *inter alia*, for the first time that in the course of the Debtor's Bankruptcy, Steven A. Schuman, an Officer of the Court, Lee T. Dicker, and Officer of the Court, **LEORNARD, DICKER & SCHREIBER LLP**, a law firm or law Corporation, acting in concert with the Debtor, Kimberly Barbour intentionally filed false or incomplete forms to conceal the *1971/72 Camaro* and the documents legal and personal documents of Appellant and others that were the subject of the Discovery requests that were in exclusive dominion and control of the Debtor, Kimberly Martin-Bragg aka Kimberly Barbour.

It was further discovered that the Debtor acting in concert with Debtor's Attorneys, Steven A. Schuman, Lee T. Dicker, Leornard, Law Office Of Peter M. Lively, Dicker & Schreiber LLP, knowingly and intentionally committed fraudulent act by failing to list an asset on the appropriate bankruptcy schedule to prevent the creditor's property from being considered by the Bankruptcy Court and the Bankruptcy Trustee. Debtor's Attorneys, Steven A. Schuman, Lee T. Dicker, Leornard, Law Office Of Peter M. Lively, Dicker & Schreiber LLP who authored this Appellee's motion herein, knowingly made false statement in the bankruptcy

paperwork, falsified financial documents used to support a credit request and misrepresented the debtor's worth in Kimberly Barbour's statements and schedules in order to qualify for a Chapter 7 bankruptcy proceeding in violation of **18 U.S.C. § 157**, **18 U.S.C. § 152**, and **11 U.S.C. § 521**. [ **please see, Adversary Case Number: 2:22-ap-01080-BR., Bankr. Dkt. 14.**].

Accordingly, this Honorable Court erred when it held in its tentative ruling that the present adversary proceeding raised essentially the same factual allegations and issues which were decided against the Appellant in the December 9, 2016 Ruling should not be adopted.

**B. The vexatious litigant Order did not require Appellant seek pre-filing order for the property in storage**

In its tentative ruling, this Honorable Court contends that:

> Clearly, the phrase related to "personal property at the Shenandoah Residence" involves the property referenced in this matter. In fact, Appellee contends that it is the same personal property that was the subject of a prior State Court judgment, the Moore case, and Appellant's previous proceedings and, therefore, falls within the parameters of the Vexatious Litigant Order. Appellant himself contends that the Sheriff found personal property at 6150 Shenandoah, which directly places the property alleged within the scope of the Order. Opp. at 8, 15; Vexatious Litigant Order at 5. [**2:22-cv-03758-GW Dkt. 27 at. p. 3, ¶ 1.**].

Appellants objects the court statement Ibid on the grounds that the court erroneously misapplied the purpose of Appellant's Bankruptcy Appeal which is premised on the Debtor's Bankruptcy Fraud and Fraud Upon the Court for failure to

disclose and concealment of assets in the Debtor's Bankruptcy schedule. Which was uncovered on July 7, 2021.

Additionally, the pre-filing order did not require Appellant to obtain pre-filing order for the property in storage. As such, this Honorable court should adopt its tentative ruling in this fact as delineated [infra]:

### Property in Storage

On July 7th, 2021, Appellant discovered that Appellee is still exclusive possession and control of the property in storage which were ordered returned to Appellant. Appellant's Bankruptcy Appeal is premised on Judge, Hon. Judge Michelle Rosenblatt's Order in **LASC #: BC480013, [please see, Exhibit. D, at. p.5., ¶4.],** which held that the Debtor is ordered to return personal property in storage to Appellant. The State Court Judge's order that the Debtor and Appellee in the instant Appeal return said personal property in storage *Ibid*, is not within the scope of the Vexatious Litigant Order because the matter concerning the **property in storage** was not before Judge Otis D. Wright II, at the time of rendition of the pre-filing order in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: *17-cv-04828-ODW-GJS.*

As such, there is no pre-filing Order concerning the property in storage which were outside the Debtor's residence at the 6150 Shenandoah Avenue. Specifically, California Superior Court Judge Hon. Michelle Rosenblatt held:

The Court grants Plaintiff IVAN RENE MOORE's request for return of property and Orders KIMBERLY MARTIN-BRAGG to return IVAN RENE MOOR'S clothing, shoes, kitchen equipment, personal property, piano, SSLK console, Masters, '71 Camaro, and personal legal documents consistent with the evidence presented at trial. This order provides that IVAN RENE MOORE is entitled to the return of all of said property in KIMBERLY MARTIN-BRAGG's possession or control including that which is storage. KIMBERLY MARTIN-BRAGG, her agents and anyone acting on her behalf are ordered not to sell, give away, damage or keep from Ivan Rene Moore any of the property that is ordered to be returned. KIMBERLY MARTIN-BRAGG, is ordered to have the property returned to IVAN RENE MOORE. **[Ex. D at. p.5., ¶4.].**

To date Appellee has failed to return the property in storage as ordered by the State court Judge Hon. Michelle Rosenblatt who found on adequate and independent state grounds that the property in storage must be returned to Mr. Moore. **[see, Exhibit. D at. p.5., ¶4.].** Appellant is entitled to his personal property in storage. On July 7, 2021, Appellant discovered that in spite of her Declaration, which was given under the penalty of perjury, **Exhibit E,** Appellee is still in possession and control of some of the personal property in storage.

## C. The issue pertaining the personal property at the Shenandoah Residence is now Moot.

The United States Supreme Court's interpretation of "cases and controversies" bars the rendition of "advisory opinion". The federal court will not render decisions in moot cases or cases that are not ripe for adjudication. To avoid issuing advisory opinion, a competent federal court require that a dispute has

matured sufficiently to warrant a decision. *Please see, Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190 (1983); *American Trucking Associations, Inc v. Los Angeles*, 569 U.S. 641 (2013).

Here, as evidenced in **Exhibit B**, correct copy of inventory and verification of Seized Items by Wells Fargo Bank and the subject of the pre-filing order, those properties are not being litigated here and there is no "cases and controversies" regarding Wells Fargo Rights to Replevin.   The personal properties have been sold by Wells Fargo Bank to satisfy its judgment against Appellant and most importantly, the remaining of the consumer debt has been discharged in Appellant's Bankruptcy in **Bankruptcy Case #:1:17-Bk.-12071-MB on June 5, 2020, therefore the issue which forms the basis of the pre-filing order for the personal properties in the Shenandoah residence is now MOOT.**

### *Appellee is not the real party in interest*

Federal Rule of Civil Procedure 17(a)(1) which requires that "[a] action must be prosecuted in the name of the real party in interest."See also, In re Jacobson, 402 B.R. 359, 365-66 (Bankr. W.D. Wash. 2009); In re Hwang, 396 B.R. 757, 766-67 (Bankr. C.D. Cal. 2008).

//

//

Here, Appellee is not the real party in interest in the personal property which were subject to Wells Fargo Bank's replevin action, **[Exhibit B],** and cannot assert any claim to said properties or have legitimate assertion that the issue pertaining said properties was already adjudicated which is the false narratives Appellee lawyers have been advancing in their zeal to defraud the court.

On or about 06/16/17 Wells Fargo Bank replevin the personal properties identified in the property seized. **[2:17-cv-02312-VAP-JEM Dkt.37 at. pp. 9-29.].** The Replevin personal properties were the personal properties that were in the 6150 Shenandoah residence that were seized to satisfy Wells Fargo's debt.   Furthermore, said personal properties **[2:17-cv-02312-VAP-JEM Dkt.37 at. pp. 9-29.]** were the personal properties that were adjudicated and the subject of Judge Otis D. Wright II, pre-filing order in *Moore v. Wells Fargo Bank, N.A., et.al.,*

Additionally, the personal property at the Shenandoah residence  were already adjudicated to be Appellant's personal property **[see, Exhibits. D, at. p.5., ¶4. & Exhibit J.],** to which Appellant has not relinquish title to his personal property located at the Shenandoah residence to Appellee.   Any attempt by this court to aid in the conversion of the personal  property when the vice which formed the basis for the pre-filing has been satisfied, and therefore **Moot,** will amount to impermissible taking under the Fifth Amendment to the United States Constitution.

It will further violate Appellant's Constitutionally protected liberty interest

in his personal property, and cause Appellant Constitutional injuries.

### D.   The Vexatious Litigant Order would not apply to an adversary proceeding in the bankruptcy court or to Bankruptcy Appeal because jurisdictional constraint by the United States Congress and the United States Constitution

In its Tentative Ruling the court observed that:

> Finally, Appellant argues that the Vexatious Litigant Order would not apply to an adversary proceeding in the bankruptcy court, and that Bankruptcy Judge Barry Russell in another one of Appellant's other matters orally opined that he did not believe that it did. See Opp. at 15-16. With all due respect to Judge Russell, this Court would find that the Vexatious Litigant Order does apply herein to Appellant's initiation of the adversary proceeding in the bankruptcy court. As observed in March & Shapiro, Cal. Prac. Guide: Bankruptcy (the Rutter Group 2022): An "adversary proceeding" is a lawsuit brought in connection with a bankruptcy case. Preparing and trying an adversary proceeding in bankruptcy court is very similar to preparing and trying a civil suit in federal district court. Id. § 20:1. Fed. R. Bankr. P. states that "Rule 3 F.R.Civ.P. applies in adversary proceedings." Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court." Federal district courts have original and exclusive jurisdiction of all cases under Title 11 of the United States Code (i.e. all bankruptcy cases). See 28 U.S.C. § 1334(a). 28 U.S.C. § 157(a) delineates that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 151 states that "[i]n each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district." In light of the above, Judge Wright's Vexatious Litigant Order is applicable to all of Appellant's case-initiating filings in the United States District Court for the Central District of California, which would include adversary proceedings in the bankruptcy court in this district. For these reasons, the Court finds that this appeal and the underlying adversary proceeding are subject to the Vexatious Litigant Order, and Appellant Moore failed to comply with its terms. Thus, this appeal is dismissed. **[2:22-cv-03758-GW Dkt. 27 at. pp. 3-4].**

Appellant respectfully objects to all of the court's averments Ibid, for the following reasons:

First: it appears that the court unwittingly misapplied *procedure vs substance* between Bankruptcy Court and the United States district court jurisdictions.

The Bankruptcy Court is Article One Court with specific jurisdiction conferred by the United States Congress.   United States District Court is an appendage of the Article III with its jurisdiction constrained also the will of Congress of the United States.   The case cited by this court for which the court derived its analysis simply stated "Similar" and not "the same".   Bankruptcy court's litigants are the Debtor and Creditors.   United States District Court has no legal authority to Discharge to discharge a debt in Bankruptcy Court, that function is the purview of the Bankruptcy.   A District Court Judge cannot issue an order discharging his or own Debt without first filing Bankruptcy which is then Adjudicated by the Bankruptcy.

**Jurisdiction**

Courts are constituted by authority and they cannot go beyond that power delegated to them.  If they act beyond that authority, and certainly in contravention of it, their judgements and orders are regarded as nullities; they are not voidable, but simply void, and this even prior to reversal." Williamson V. Berry, 8 How. 945, 540 12 L. Ed. 1170, 1189 (1850).

It has also been held that "It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside, It may be impeached in any action direct or, collateral.' Holder v. Scott, 396 S.W.2d 906, (Tex.Civ.App., Texarkana, 1965, writ ref., n.r.e.).  A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid.

28 U.S.C. § 1334(b) and 28 U.S.C. § 157 as well as Fed. R. Bankr. P. 8013.A., has no pre-filing order requirements for the filing Bankruptcy Appeal in the United States District Court.   The subject Matter of the Bankruptcy Court is a creation of statues and the United States Constitution under **Article 1**.  While the complaint filed in Bankruptcy Court is similar to the one filed in District Court [sic] as to form, United States Congress did not authorize the Unites States District Court to issue a pre-filing Order that is binding in the Bankruptcy Court because to do so will unduly interfere with individual(s) right(s) and access to court.

As the court is aware, the court has not provided one citation regaining this substantive argument of subject matter jurisdiction in the United States district that is the same as the subject matter jurisdiction on Bankruptcy Court let alone one that allows the District Court to dismiss Bankruptcy Appeal because of a vexatious litigant pre-filing Order that is MOOT.

Accordingly, Appellant urge this Honorable Court not to adopt the Court's tentative ruling and allow this case to be decided on its merit.

## III.    Conclusion

For the foregoing reasons, Appellant respectfully and vehemently objects to the averments in the tentative ruling request that the Tentative Ruling should not be adopted and allow Appellant's Appeal to be decided on its merits with oral arguement.

March 19th , 2023

Respectfully Submitted

Ivan Rene Moore
Appellant in Pro se

## PROOF OF SERCVICE

I, the undersigned, declare that I am employed in the city of Los Angeles, California.   I am over the age of eighteen (18) years and I am a party to the within action.

On **March 19th, 2023** I served the following document:

**APPELLANT'S OBJECTION**
**TO TENTATIVE RULING**

On the party listed below:       SEE ATTACHED MAINING SERVICE LIST

[X ]  BY MAIL- I placed each such sealed envelope, with postage thereon fully prepaid for first class mail, for collection and mailing at Los Angeles, California, following ordinary business practices.

[  ]   BY FACSIMILE- I caused the said document to be transmitted by Facsimile machine to the address(es) noted above.

[  ]   STATE- I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[  ]   FEDERAL- I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

DATED:  **March 19th, 2023**

Respectfully Submitted,

Devra Allen **Declarant**

34

## MAILING SERVICE LIST

**Steven A. Schuman**
**Leonard Dicker and Schreiber LLP**
**10940 Wilshire Boulevard Suite 2100**
**Los Angeles, CA 90024-3936**
**Attorney for Kimberley Martin Bragg**

**Ronald Hills**
**1236 Redondo Blvd**
**Los Angeles, California 90019**

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the:
**APPELLANT'S OBJECTION**
**TO TENTATIVE RULING**

This Document has been served upon by U.S. Mail, postage prepaid, addressed to:

### SEE ATTACHED SERVICE LIST

Dated: March 19th, 2023

Ivan Rene Moore
Appellant Pro se

# EXHIBIT

# A

**JS-6**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### **AMENDED** CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-3758-GW | Date | March 17, 2023 |
| Title | *In Re Kimberly Martin Bragg* | | |

Present: The Honorable  **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:

None Present                        None Present

**PROCEEDINGS :   IN CHAMBERS - RULING ON APPELLEES' MOTION TO DISMISS APPEAL  [21]**

Attached hereto is the Court's Ruling on Appellee's Motion [21] set for hearing on March 20, 2023 at 8:30 a.m. *As per Fed. R. Bankr. P. 8019(b), the March 20, 2023 oral argument is taken off-calendar and appearance is not required.*

Initials of Preparer   JG

*In re Kimberly Martin-Bragg*.; Case No. 2:22-cv-3758-GW
Tentative Ruling on Appellee's Motion to Dismiss Appeal

     The matter before the Court is Appellee Kimberly Martin Bragg's Motion to Dismiss pro se Appellant Ivan Rene Moore's appeal from the Bankruptcy Court's dismissal of an adversary proceeding with prejudice.[1] *See* ECF No. 1. Said dismissal was premised on the facts that: (1) Appellant had previously initiated an adversary proceeding which was decided against him by the Bankruptcy Court (the "December 9, 2016 Ruling") and an appeal from that ruling was dismissed by the District Court; and (2) the present adversary proceeding raised essentially the same factual allegations and issues which were decided against the Appellant in the December 9, 2016 Ruling. *See* Findings of Fact and Conclusions of Law Dismissing March 1, 2022 Adversary Proceeding with Prejudice ("May 20, 2022 Findings/Conclusions"), ECF No. 2 at pages 10-15 of 19. As noted in the May 20, 2022 Findings and Conclusions, Appellant has previously initiated a number of adversary proceedings in Appellee's bankruptcy which have all have been dismissed. *Id.*

     On November 3, 2022, this Court issued an Order to Show Cause re Dismissal for Lack of Prosecution. ECF No. 11. Appellant then filed a Motion to Reinstate the Appeal, ECF No. 12, which the Court granted. ECF No. 14. Appellee has since filed the present Motion to Dismiss the Bankruptcy Appeal ("Mot."). ECF No. 21. Appellant filed an Opposition ("Opp."), ECF No. 22, and Appellee filed a Reply. ECF No. 24.

     On May 17, 2018, the Honorable Otis D. Wright II entered a Vexatious Litigant Order declaring Appellant a vexatious litigant per Local Rule 83-8, and ordered that the Clerk was not to process any "case-initiating" pleadings from him unless the pleading had been screened by a judicial officer of the Court and approved for filing. *See Moore v. Wells Fargo Bank, et al.*, No. CV-17-4828-ODW (GJSx) ("*Moore* case"), Vexatious Litigant Order, ECF No. 35, at 5.[2] Said ruling was upheld on appeal. *See Moore* case, ECF No. 41. Appellant's filing of his case-initiating complaint in the adversary proceeding failed to follow the requirements outlined in Judge Wright's Order.

---

[1] *See In re Kimberly Martin-Bragg*, Case No. 2:16-BK-22878-BR, Adv. No. 22:-ap-01058-BR (Bankr. C.D. Cal.).

[2] Appellant's Complaint in the *Moore* case alleged, *inter alia*, that: (1) Appellee had trespassed on his property at 6150 Shenandoah Avenue, Los Angeles, California 90056; Appellee with other defendants had converted personal property from that location; and (3) Appellant had obtained a $3,150,000 judgment against her. *See Moore* case, ECF No. 1.

Appellee's Motion argues that Appellant's failure to abide by the Vexatious Litigant Order is dispositive of this matter and requires dismissing the appeal. In his Opposition, Appellant simply contends that the facts and issues involved in this case do not fit within the parameters of Judge Wright's Vexatious Litigant Order. Opp. at 15. However, the Order requires that Plaintiff request leave to file from a judicial officer in the following situation:

> Any case-initiating pleading submitted by Plaintiff must be screened to determine if does any of the following: seeks to raise any of the claims alleged in this action; attacks, seeks to vacate, void or expunge, or otherwise seeks to challenge in any way – whether directly or indirectly – Wells Fargo's $7.1 million judgment lien or Wells Fargo's right to levy and sell personal property of Moore and the other Judgment Debtors; or seeks to litigate ownership of 6150 Shenandoah Avenue, Los Angeles, CA 90065 ("Shenandoah Residence") or the personal property at the Shenandoah Residence.

Vexatious Litigant Order at 5. Clearly, the phrase related to "personal property at the Shenandoah Residence" involves the property referenced in this matter. In fact, Appellee contends that it is the same personal property that was the subject of a prior State Court judgment, the *Moore* case, and Appellant's previous proceedings and, therefore, falls within the parameters of the Vexatious Litigant Order. Appellant himself contends that the Sheriff found personal property at 6150 Shenandoah, which directly places the property alleged within the scope of the Order. Opp. at 8, 15; Vexatious Litigant Order at 5.

Appellant further contends that this case is irrelevant to the Vexatious Litigant Order and previous proceedings because it involves allegations of Appellee's alleged bankruptcy fraud. Opp. at 13-15. The issue, however, is that the case giving rise to the Vexatious Litigant Order also related to Wells Fargo's exercise of rights with respect to the replevin property of Appellant held at the Shenandoah Residence after Appellee declared bankruptcy. Appellant's dispute with Appellee appears to be the underlying commonality amongst all of Appellant's lawsuits involving Appellee Bragg or Wells Fargo, which ultimately led to Judge Wright's issuance of the Vexatious Litigant Order. *See generally* Mot., Exs. 1-25.

Finally, Appellant argues that the Vexatious Litigant Order would not apply to an adversary proceeding in the bankruptcy court, and that Bankruptcy Judge Barry Russell in another one of Appellant's other matters orally opined that he did not believe that it did. *See* Opp. at 15-16. With all due respect to Judge Russell, this Court would find that the Vexatious Litigant Order does apply herein to Appellant's initiation of the adversary proceeding in the bankruptcy court. As observed

in March & Shapiro, *Cal. Prac. Guide: Bankruptcy* (the Rutter Group 2022):

> An "adversary proceeding" is a lawsuit brought in connection with a bankruptcy case. Preparing and trying an adversary proceeding in bankruptcy court is very similar to preparing and trying a civil suit in federal district court.

*Id.* § 20:1. Fed. R. Bankr. P. states that "Rule 3 F.R.Civ.P. applies in adversary proceedings." Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court." Federal district courts have original and exclusive jurisdiction of all cases under Title 11 of the United States Code (*i.e.* all bankruptcy cases). *See* 28 U.S.C. § 1334(a). 28 U.S.C. § 157(a) delineates that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 151 states that "[i]n each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district." In light of the above, Judge Wright's Vexatious Litigant Order is applicable to all of Appellant's case-initiating filings in the United States District Court for the Central District of California, which would include adversary proceedings in the bankruptcy court in this district.

For these reasons, the Court finds that this appeal and the underlying adversary proceeding are subject to the Vexatious Litigant Order, and Appellant Moore failed to comply with its terms. Thus, this appeal is dismissed.[3]

The Court further finds that the facts and legal arguments are adequately presented in the filed papers/briefs and record, and the decisional process would not be significantly aided by oral argument. As per Fed. R. Bankr. P. 8019(b), the March 20, 2023 oral argument is taken off-calendar.

---

[3] It is further noted that, if Appellant's appeal were considered on the merits, the Court would affirm the May 20, 2022 ruling dismissing the current adversary proceeding with prejudice because (as correctly held by the bankruptcy court) Appellant is simply raising matters that have previously been decided against him and on which he hitherto appealed and lost.

# EXHIBIT

# B

Related DDJ



IVAN RENE MOORE
1236 South Redondo Blvd
Los Angeles, CA 90019

PLAINTIFF, In Pro Se
(323) 932-9439

PAID

JUN 3 0 2017

Clerk, US District Court
COURT 4612

FILED

2017 JUN 30 AM 11: 24

BY:

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

LA C V 17  04828-ODW-GJS

IVAN RENE MOORE,

    Plaintiff, an individual;

vs.

WELLS FARGO BANK, N.A., a National
Bank;  UNITED STATES MARSHALS; a
US Agency; ASSET RELIANCE, INC.; a
California Corporation;  CRAIG HANSEN
an individual , and as an Agent for WELLS
FARGO BANK, N.A;  EDWARD D.
TESTO, an individual , and as an Agent for
ASSET RELIANCE, INC.; GEORGE
BARBOUR,  an individual, AND DOES 1
THROUGH 25,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.:**

**VERIFIED FIRST COMPLAINT FOR:**

1. VIOLATION OF 42 U.S.C § 1983
2. VIOLATION OF RIGHTS UNDER
   5TH AMENDMENT TO THE UNITED
   STATES CONSTITUTION AND THE
   CALIFORNIA CONSTITUTION
3. CONVERSION
4. INTENTIONAL INTERFERENCE
   WITH PROSPECTIVE ECONOMIC
   ADVANTAGE
5. NEGLIGENCE INTERFERENCE
   WITH PROSPECTIVE ECONOMIC
   ADVANTAGE
6. TRESPASS TO CHATTEL
7. REPLEVIN
8. VIOLATION OF BUSINESS AND
   PROFESSIONS  CODE § 17200 ET
   SEQ
9. NEGLIGENCE
10. FRAUD AND DECEIT
11. VIOLATION OF US BANKING
    STATUTES
12. CONSTRUCTIVE TRUST
13. ACCOUNTING
14. PUNITIVE DAMAGE ALLEGATION

**DEMAND FOR JURY TRIAL**



ORIGINAL

Plaintiff, **IVAN RENE MOORE**, ("Plaintiff"), alleges:

## I

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to **28 U.S.C.§ 1331**, which gives district court Original jurisdiction over civil actions arising under the Constitution, and laws of the United States, and for violation of Rights that are secured under **42 U.S.C. § 1983**.

2. Furthermore, this court has supplemental jurisdiction over state claims pursuant to **28 U.S.C. § 1367**.

3. Venue is proper in this judicial district under **28 U.S.C. § 1391**, because the events that gave rise to this Complaint occurred in this district.

## II

### PARTIES

4. Plaintiff, **IVAN RENE MOORE**, an individual, is now, and at all times, relevant to this action, and is a resident of the County of Los Angeles, State of California. Plaintiff was in lawful possession of certain properties, until February 12, 2012, when they were converted and trespassed upon by Kimberly Martin-Bragg, aka Barbour, who refused to return them to Plaintiff, despite a Judgment in his favor and a court order that she and her agents and attorneys return them. She conspired with Defendants, allowing them to convert these properties while she and Defendant, George Barbour, were in unlawful possession. These properties were converted by Wells Fargo Bank, United States Marshals and others, on about April 20th, 2017. Plaintiff alleges that many of said properties were personal and business properties belonging to Ronald Hills, AC Cotton, West Viking Studio, Willie and Ima Moore, Rick Wilson, Mike Starr, Mark Rezyka, Joe and Hellen Easton, James Butler, Loren Chaney, Solid State Logic, ("third

parties"), and others. The properties were in unlawful possession of the Kimberly Martin-Bragg Barbour and Defendant, George Barbour when they were unlawfully converted, and taken by Defendants, Wells Fargo and others.

5. Defendant, WELLS FARGO BANK, N.A., ("WELLS FARGO"), a national banking association, is existing under the laws of the United States, and was at all times pertinent, conducting business in the County of Los Angeles, State of California. Plaintiff alleges that, Defendant, WELLS FARGO BANK, N.A., ("Wells Fargo"), intentionally and substantially interfered with certain personal properties, by filing false and fraudulent court documents, and by employing or engaging the service of the United States Marshals to impermissibly, and unlawfully take dominion and control of the property of Plaintiff and other third parties. Thereafter, Defendant, Wells Fargo, converted said property without any legal justification. Wells Fargo knew that the properties they converted belonged to Plaintiff Moore and to the other third parties. Kimberly Martin-Bragg, aka Barbour, and Defendant George Barbour also knew the properties belonged not only to Mr. Moore, but to other third parties. Many of the third parties had made claims for their property in the Chapter 11 Bankruptcy, and the Chapter 7 Bankruptcy of Martin-Bragg, aka Barbour. Her attorneys and the Wells Fargo attorneys also knew this fact. As a result of the fraudulent statements of Wells Fargo and Kimberly Martin-Bragg, aka Barbour, the United States Marshals failed to conduct a thorough investigation as they are under duty to do so, in order to ascertain who owned the properties. Wells Fargo and others, including the Defendant, US Marshals, converted these properties and took them impermissibly, in violation of the 5th Amendment to the United States Constitution. Even though, Wells Fargo is not a state actor, private companies can violate civil rights. Defendants

3

were acting in conspiracy with other defendant(s), and within the scope and course of its agency and employment.

6. Defendant, UNITED STATES MARSHALS, ("US MARSHALS"), organized and existing under the laws of the United States, was at all time pertinent, conducting business with the County of Los Angeles, State of California. Plaintiff is informed, believes, and thereon alleges that, Defendant, US MARSHALS, intentionally and substantially interfered with Plaintiff's personal properties by conspiring with, WELLS FARGO BANK, N.A., to impermissibly take certain personal property, without notice, in violation of the Due Process Clause of the 5th and 14th Amendment to the United States Constitution. Defendants, UNITED STATES MARSHALS and WELLS FARGO BANK, unlawfully levied on the properties of third parties and on exempt property of Plaintiff. Said properties were not the subject of Wells Fargo's Replevin action.

7. Plaintiff further alleges that, all Defendants, including the United States Marshals and Wells Fargo, failed to investigate, and conduct due diligence to ascertain who owned the properties they converted and took impermissibly, in violation of the 5th Amendment to the United States Constitution. Defendants were acting in conspiracy with other defendant(s), and within the scope and course of its agency and employment.

8. Defendant, CRAIG HANSEN, is and at all times herein mentioned in this Complaint, an individual residing, and/or conducting business in the county of Los Angeles, State of California. CRAIG HANSEN is an employee and/or agent of Defendant, Wells Fargo, and his acts are attributable to Wells Fargo.

//

//

4

9.  Plaintiff alleges that Defendant, CRAIG HANSEN, ("HANSEN"), intentionally and substantially interfered with Plaintiff's personal properties by conspiring with other defendants to take possession of the properties, and then, refused to return them. HANSEN knew that many of the properties Wells Fargo converted belonged to Plaintiff and to other third parties. Defendant, CRAIG HANSEN, was acting in conspiracy with other defendant(s), and within the scope and course of its agency and employment.

10.  Defendant, ASSET RELIANCE, INC., ("ASSET") a corporation, organized and existing under the laws of the State of California, was at all time pertinent, conducting business with the County of Los Angeles, State of California. Plaintiff alleges that, Defendant, ASSET RELIANCE, INC., intentionally and substantially interfered with Plaintiff's and others personal properties by conspiring with other defendants to take possession of the properties, and then refusing to return them. Defendant, ASSET RELIANCE, INC., knew that some of the properties belonged to other third parties, and to Mr. Moore, when they interfered with possession, and was acting in conspiracy with other defendant(s), within the scope and course of its agency and employment.

11.  Defendant, EDWARD D. TESTO, is and at all times herein mentioned in this Complaint, an individual residing in the county of Los Angeles, State of California. EDWARD D. TESTO is an agent or an employee of Defendant, ASSET RELIANCE, INC., and his acts are attributable to them.  On information and belief, Plaintiff alleges that EDWARD D. TESTO is a participant in the unlawful inference of Plaintiff's personal properties, inducing participation in the interference with prospective economic advantage and interference with contractual relations herein sued on, in this verified complaint. Defendant EDWARD D. TESTO, was acting in

conspiracy with other defendant(s), and within the scope and course of its agency and employment.

12. Defendant, GEORGE BARBOUR, is and at all times herein mentioned in this complaint, an individual residing in the County of Los Angeles, State of California. Plaintiff alleges that GEORGE BARBOUR has knowledge that the property belonged to Plaintiff Moore and other third parties, yet he participated in the wrongful retention of these properties, for some years. Barbour has been to Court, and knows that Plaintiff Moore was awarded the return of these properties in the action he won against Barbour's claimed spouse, Kimberly Martin-Bragg, aka Barbour. Defendant Barbour intentionally and substantially interfered with Plaintiff's personal properties by conspiring with other defendants to take possession of the properties and refused to return them. Defendant GEORGE BARBOUR, was acting in conspiracy with other defendant(s), and within the scope and course of its agency and employment.

13. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants named herein as Does 1 through 25, inclusive, are unknown to Plaintiff who therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of these defendants when the same have been ascertained. Plaintiff is informed and believes that each fictitiously named defendant is responsible, in law and in fact, for the obligations alleged herein. Plaintiff is informed and believes, and thereon alleges that at all relevant times, each of the defendants was acting in conspiracy with other defendant(s), and within the scope and course of its, his, or her agency and employment.

//

//

6

## III

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.  For over twenty years, Plaintiff, IVAN RENE MOORE and others, including Ronald Hills, were and are colleagues and business associates in various businesses, opportunities and ventures, including but not limited to music production, recording, managing, leasing, renting, investing, and other business opportunities.  Much of their business was operated from a multi-million dollar music production studio located in Mr. Moore's and Mr. Hills' home and office of over the past twenty plus years.  Their home is located at 6150 Shenandoah Avenue, Los Angeles, California 90056. The property in question is valued in excess of $20,000,000, and a large part of the property is one of a kind and irreplaceable items, bought and collected over twenty-years.  It includes personal, business, corporate, legal, and professional properties.  A majority of these properties were not subject to any Replevin action filed by Wells Fargo Bank.

15.  Plaintiff alleges that, Defendant, UNITED STATES MARSHALS, ("US MARSHALS"), organized and existing under the laws of the United States, was at all time pertinent, conducting business with the County of Los Angeles, State of California.  Plaintiff is informed and believes, and thereon alleges that Defendant, U.S MARSHALS, intentionally and substantially interfered with Plaintiff's personal properties by conspiring with WELLS FARGO BANK, N.A., to impermissibly take these properties, without notice, in violation of the Due Process Clause of the 5th and 14th Amendment to the United States Constitution.  Defendants, UNITED STATES MARSHALS and WELLS FARGO BANK, unlawfully levied on the properties of third parties that were in lawful possession of the Plaintiff.  Said properties were not the subject to the Replevin action.

Wells Fargo knew this, yet they filed secret, false and fraudulent papers with the US District Court, to gain access to the properties, and to lead the US Marshals into believing that Wells Fargo had the right to gain possession of all of this property. Wells Fargo did this in conspiracy with Kimberly Martin-Bragg, aka Barbour, her attorneys, and agents, and Defendant George Barbour and possibly others. Kimberly Martin-Bragg, aka Barbour, ("Bragg"), has admitted she conspired with Wells Fargo. Plaintiff is informed and believes, and upon such information and beliefs, alleges that Bragg conspired to give Wells Fargo Plaintiff's and other third parties' property, because Plaintiff Moore holds a Judgment against Bragg for the return of the property, or the payment in Judgment of $3,150,000.00 plus costs and interests awarded to Mr. Moore on July 31, 2013, from the Judgment entered in September of 2013. Bragg has since filed bankruptcy twice to avoid returning the property or paying the Judgment. (See In Re: Kimberly Martin-Bragg dismissed for cause, and In Re: Kimberly Barbour, aka Martin-Bragg, aka Bragg). On information and belief, Bragg has a propensity for stealing the property of others, including the elderly, by taking homes and personal property, and claiming them to be given to her or purchased by her. Bragg is a disgraced LAPD Officer and a Real Estate Agent. Plaintiff further alleges that United States Marshals and Wells Fargo Bank failed to conduct due diligence to ascertain who owned the properties they converted and took impermissibly, in violation of the 5th Amendment to the United States Constitution. Defendants were acting in conspiracy with other defendant(s), and within the scope and course of its agency and employment. Defendants were acting in conspiracy with other defendant(s), and within the scope and course of its agency and employment.

8

16. On February 12, 2012, Mr. Moore was unlawfully evicted from his home, by Kimberly Martin-Bragg. That unlawful eviction was later reversed in full by the California Court of Appeal Second District; see **Bragg vs. Moore 219 Cal App 4th**, (2013). Despite winning the appeal, Mr. Moore is still not in possession of his home. Bragg is still there. Mr. Moore and Mr. Hills' properties, as well as many other third parties properties, were wrongfully kept by Kimberly Martin-Bragg since then. Kimberly Martin-Bragg, aka Barbour, knew that she had wrongfully kept this property, which is the property of the Plaintiff and others.

17. Plaintiff alleges on information and belief, Kimberly Martin-Bragg, aka Barbour, at some point, married Defendant Barbour, who has also claimed and bragged to have the property, and swore to sell it or keep it. On information and belief, he, Barbour, resides at Mr. Moore's and Hills' home located at 6150 Shenandoah, and has and had management and control of the premises and the property contained therein. He also has access to storage facilities where the property may be stored, and or was stored. Defendant George Barbour has continuously failed to return Plaintiff's property, despite his knowledge that the property belongs to Plaintiff and other third parties, and despite a Court Order that Bragg and all of her agents and attorneys do so.

18. Since the eviction in February, Mr. Hills has been seeking the return of his property. In 2013, Mr. Moore won a conversion and trespass to chattel action for some of these properties, and Bragg, aka Barbour, was under Court Order to return them, but she has not. Defendant Barbour has been present in court, and is well aware of Plaintiff's, Mr. Moore's, Judgment and orders about the property, but he has failed to return them.

19. During this period, and continuing to the present day, Bragg, aka Barbour, and the defendants began to conspire to keep these properties, or to transfer them between each other, and to deprive more permanently, Plaintiff's property from him.

9

She has admitted selling some of the property. Bragg, aka Barbour, has made statements under oath admitting that she is an agent of another Defendant believed to be Defendants, Wells Fargo and/or Asset. Asset has had access and control of the property for a period, and on information and belief is acting as an agent of Wells Fargo.

20. Bragg, aka Barbour, is now in bankruptcy, but still unlawfully exercising control and dominion over the property. Bragg, aka Barbour, is claiming she is broke, but has admitted in the trial of Moore vs. Bragg BC 480013, under oath, to selling off the property. Her husband, Defendant Barbour, is a participant in her wrongful conduct, and has knowledge of the Judgment and of the two bankruptcies, his purported wife filed, which contain claims by Mr. Moore and many other third parties for the return of their property.

21. Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, each of them, have taken or are in wrongful possession of Plaintiff's personal properties. They have refused or are refusing to return them when demand for the properties was made. Plaintiff alleges that they are or have conspired to deprive him permanently of his property, despite the fact, that they know the property is his. They have in essence re-converted these properties a second time, after Mr. Moore won a unanimous nineteen day trial for conversion and trespass to chattel against Bragg. Despite the Judgment and award, Bragg, and her agents and attorneys, failed to return the property. These personal and professional properties were stored and kept at the residence of the Plaintiffs, Ivan Rene Moore and Ronald Hills, located 6150 Shenandoah Avenue, Los Angeles, CA, where the Plaintiffs, Mr. Moore and Mr. Hills, conducted their business operations. Now Bragg, aka Barbour, Defendant Barbour, their attorneys, Wells Fargo and their attorneys,

have conspired, schemed, and concocted a plan to deprive Mr. Moore and the other third parties, permanently of their rightful and lawful property.

22. Subsequently, KIMBERLY MARTIN-BRAGG, aka KIMBERLY BARBOUR, commenced a fraudulent unlawful detainer action against Plaintiff, IVAN RENE MOORE, thereby causing Plaintiff, Ivan Rene Moore, to be removed from his home of 20 plus years. Mr. Moore has obtained a judgment against her for the conversion and trespass to chattel and loss of earnings of his personal property. To date, she has wrongfully and intentionally failed to return any of Mr. Moore's property. And despite Plaintiff's requests, she has failed to return any of his and others property based on an unlawful scheme with Wells Fargo and others.

23. Consequently, KIMBERLY MARTIN-BRAGG, aka KIMBERLY BARBOUR, and her spouse, GEORGE BARBOUR, have and continue to intentionally and substantially interfere with Plaintiff's personal and business properties by unlawfully taking possession and preventing Plaintiff from having access to his personal properties and legal documents. Plaintiff and all the third parties that had their property at 6150 Shenandoah, at the time of the eviction, have made demand for the return of their properties; and each time, KIMBERLY MARTIN-BRAGG, aka KIMBERLY BARBOUR, and GEORGE BARBOUR, have refused to return Plaintiff's properties to Plaintiff. This is a continuous and ongoing wrongful course of conduct.

24. Subsequently, KIMBERLY MARTIN-BRAGG, aka KIMBERLY BARBOUR, and GEORGE BARBOUR, conspired to give and gave possession of Plaintiff's personal properties to WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, and EDWARD D. TESTO. This is a continuous and ongoing wrongful course of conduct committed by Defendants, and each of them. Plaintiff alleges that, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, and EDWARD D. TESTO, intentionally

and substantially interfered with Plaintiff's personal properties by taking possession and control over Plaintiff's personal properties without the consent of the Plaintiff. And all of the Defendants knew that the property belonged to Plaintiff and others, at the time of the conspiracy and the wrongful conversion and trespass.

25. In addition to the economic relationship plaintiff had with some of the owners of the property, Plaintiff was in an economic relationship with various other third party artists which required the use of his personal, business, and legal properties that are in the unlawful possession of the Defendants. Much of this property is used in the method and manner of pursuing their professions. The Defendants knew this and have known this since 2012.

26. Plaintiff further alleges that, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and each of them, was aware of economic relationship between the Plaintiff, third parties, and Various Artists in the Music Industry and other third parties, and well aware of the continuing probability of future economic benefit to the plaintiff, IVAN RENE MOORE.

27. On information and belief, Plaintiff alleges that, KIMBERLY MARTIN-BRAGG, aka KIMBERLY BARBOUR, and GEORGE BARBOUR, gave possession, either temporary or permanently, of Plaintiff's and other third parties' properties to WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, and EDWARD D. TESTO. KIMBERLY MARTIN-BRAGG and DEFENDANT GEORGE BARBOUR may have sold some of Plaintiff's and others' property. Defendants named in this paragraph, conspired to deprive with each other, and continue to deprive Plaintiff of all of his pecuniary interest, and enjoyment of his personal properties without any privilege or legal authority to do so. They certainly do not and never have had Plaintiff's consent. They do not have the consent of any of the owners of the property.

12

28. Plaintiff contends that the major significance of the conspiracy rests in the fact that it renders each participant, in the wrongful act, responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he/she was a direct actor, and regardless of the degree of his activity. (See, *Applied Equipment Corp.*, 7 Cal.4th at p. 511, internal citations omitted.).

29. On information and belief, Plaintiff alleges that, on or about March of 2017, WELLS FARGO BANK filed false, secret, and fraudulent court documents, as is their habit, in the US District Court, and then conspired with the US MARSHALS, who then conspired with Wells Fargo, to deprive Plaintiff of the use and enjoyment of his personal properties without just compensation and without giving Plaintiff notice of their action.

30. Plaintiff seeks damages against Defendants, WELLS FARGO BANK, N.A., UNITED STATES MARSHALS, ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 through 25, for each and every theory in this complaint.

31. Plaintiff alleges that Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, and GEORGE BARBOUR, conspired to harm Plaintiff. Plaintiff claims that he was harmed by these defendants, who impermissibly converted, trespassed, interfered, breached duties, committed fraud, violated court orders and other wrongful acts; and that these Defendants, are responsible for the harm because they were part of a conspiracy to commit these wrongful torts and acts. Defendants, and each of them, named in this paragraph, were and are well aware that they were planning to commit the wrongful acts; and Defendants, named in this paragraph, agreed with each other and others, and intended that the wrongful acts be committed.

**FIRST CAUSE OF ACTION**

**VIOLATION OF 42 U.S.C. § 1983**

(Against Defendants, UNITED STATES MARSHALS and DOES 1 through 25)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs, as though fully set forth herein, on information and belief, Plaintiff alleges that on or about April of 2017, the US MARSHALS recklessly and callously seized Plaintiff's personal, business, corporate and legal property without notice and without cause. In doing so, they deprived Plaintiff of the use and enjoyment of his property under 42 US 1983. Defendant, US MARSHALS, did so acting under color of law, and violated Plaintiff's civil rights by depriving Plaintiff's interest in his personal properties.

33.  Plaintiff alleges that by seizing his property, Defendant, US Marshals deprived Plaintiff of his fundamental rights to liberty and right to property, secured by the 5th and 14th Amendment to the Constitution, and the protection secured under 42 U.S.C. § 1983.

34.  Plaintiff alleges that as direct and proximate results of Defendants' conduct, Plaintiff has sustained substantial injuries in the amount to be determined by jury at trial.

35.  Plaintiff alleges that a federal right was violated, and similar to tort law, that the alleged violation was a proximate or legal cause of the damages that the plaintiff suffered. (*Arnold v. IBM Corp.*, 637 F.2d 1350 [9th Cir. 1981]).

36.  The Supreme Court has also held that **Punitive Damages** are available under section 1983 (*Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 [1983]). Defendant's, US Marshals', conduct was reckless or callously indifferent to the federally protected rights of Plaintiff and others, or the defendant was motivated by an evil intent. Because the purpose of punitive damages is to punish the wrongdoer; such damages may be awarded even if the Plaintiff cannot show actual damages. (*Basista v. Weir*, 340 F.2d 74 [3d Cir. 1965]).

## SECOND CAUSE OF ACTION

## VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS

(Against Defendants UNITED STATES MARSHALS and DOES 1 through 25)

37. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

38. On information and belief, Plaintiff alleges that, on or about April of 2017, the US MARSHALS recklessly and callously seized Plaintiff's personal, business, corporate and legal property without notice and without cause. In doing so, they deprived Plaintiff of the use and enjoyment of his property under 42 US 1983. Defendant, US MARSHALS, did so, acting under color of law, and violated Plaintiff's civil rights by depriving Plaintiff's interest in his personal properties under the US and the State of California Constitution.

39. The California Constitution, **ARTICLE 1 DECLARATION OF RIGHTS,** provides: "SECTION 1. All people are by nature, free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

40. It further provides, "SEC. 24. Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."

41. In seizing the Plaintiff's property, intentionally, callously and recklessly, and without notice and cause, Defendant, US Marshals: deprived Plaintiff of his ownership and use of enjoyment of his property; deprived Plaintiff of the right to practice his profession; deprived Plaintiff of his privacy rights, in that Plaintiff had many private items from his family, and from deceased and very famous artists and groups; and deprived Plaintiff of his right to happiness

under both the US and the California Constitution. California 37. Defendants, US Marshals, were acting or purporting to act in the performance of their official duties.

42. Defendant's, US Marshals', conduct violated Plaintiff's, Ivan Rene Moore's, right to own, possess, and enjoy his property; to practice his profession; to seek happiness; and to enjoy his privacy.

43. Plaintiff was harmed by the actions of the Defendant, US Marshals, and this deprivation by Defendant, US Marshals, was a substantial factor in causing Plaintiff's harm.

44. Plaintiff alleges that as direct and proximate results of Defendants' conduct, Plaintiff has sustained substantial injuries in the amount to be determined by jury at trial.

45. Plaintiff is entitled to seek punitive damages as a result of the intentional, callous, reckless, and despicable conduct of Defendant, US Marshals.

### THIRD CAUSE OF ACTION

### CONVERSION

(Against Defendants, WELLS FARGO BANK, N.A., US MARSHALS,

ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO; GEORGE BARBOUR,

and DOES 1 through 25)

46. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

47. At all times herein mentioned, Plaintiff, had lawful possession of all of his personal properties, and the property of the other third parties.

//

//

16

48. Plaintiff, alleges that on or about April of 2017, Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 through 25, wrongfully took dominium and control over personal properties that were in the lawful legal possession of the Plaintiff, but that were wrongfully in the possession of Kimberly Martin-Bragg, aka Barbour, and Defendant George Barbour and possibly others.

49. Plaintiff alleges that WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 through 25 intentionally and substantially interfered with Plaintiff's personal properties, by taking possession and control over Plaintiff's properties and by preventing Plaintiff, IVAN RENE MOORE, from having access to his properties. Plaintiff made several demands for the return of his personal properties and each time, Defendants, and each of them, refused to return Plaintiff's personal properties.

50. Plaintiff, orally and in writing, demanded the immediate return of the above-mentioned properties; but Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and each of them, has failed and refused, and continues to fail and refuse, to return the properties to plaintiff.

51. As a proximate result of Defendants' conversion, and the wrongful acts herein alleged, Plaintiff has been harmed and damaged in the sum of not less than $50,000,000.00, (Fifty Million Dollars), and such other amounts to be proven at trial.

52. Plaintiff alleges that Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(AS TO DEFENDANTS WELLS FARGO BANK, N.A.,
ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR,
and DOES 1 through 25)

53.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

54.  The elements of the tort of Intentional Interference Torts with Prospective Economic Advantage are: (1) an economic relationship between the plaintiffs and some third person containing the probability of future economic benefit to the plaintiffs, (2) knowledge by the defendants of the existence of the relationship, (3) intentional acts on the part of the defendants designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) damages to the plaintiff proximately caused by the acts of the defendants. *Buckaloo v. Johnson*, (1975) 14 Cal.3d 815, 827.

55.  In seizing Plaintiff's property, in converting Plaintiff's property, Plaintiff, IVAN RENE MOORE, alleges that, Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 through 25, intentionally interfered with an economic relationship between Plaintiff, IVAN RENE MOORE, and others, including but not limited to each other, and EN VOGUE, and SHEY, and several other Artists in Los Angeles, that would have resulted in an economic benefit to Plaintiff, IVAN RENE MOORE.

56.  Defendants, and each of them, had knowledge of Plaintiff's profession and his Grammy Award Nominations, and the fact that he was in a contractual relationship with third parties, from which he would benefit, was public information.

18

57. Plaintiff alleges that WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, acted with the intent to disrupt the relationship between Plaintiff and EN VOGUE, and SHEY, and other third parties, and several other Artists in Los Angeles.

58. Plaintiff alleges that WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, by intentional acts, designed to disrupt Plaintiff's relationships as described above, by the execution of fraudulent and illegal documents, and through intentional and malicious acts, and through the promulgation of fraudulent documents, to deprive Plaintiff of economic relationship with EN VOGUE, and SHEY (Artist), and several other Artists in Los Angeles, and other third parties.

59. Plaintiff alleges that WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, effectuated and participated in interference, and disrupted Plaintiff's economic relationship with these third parties, and were the proximate cause of Plaintiff's harm.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (AGAINST ALL DEFENDANTS)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Plaintiff, IVAN RENE MOORE, was in an economic relationship with, EN VOGUE, SHEY, and several other recording Artists and other third parties in Los Angeles, California, that probably would have resulted in a future economic benefit to Plaintiff.

19

61. Plaintiff alleges that, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR and DOES 1 Through 25, knew of Plaintiff's relationship with EN VOGUE, and SHEY (Artist), and several other Artists in Los Angeles and other third parties, because it was public information.

62. Plaintiff alleges that, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, knew or should have known that this relationship would be disrupted if each of them failed to act with reasonable care.

63. Plaintiff alleges that WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, AKA SLEW FOOT, and DOES 1 Through 25, failed to act with reasonable care when Defendants, and each of them, interfered with the relationship with EN VOGUE, and SHEY (Artist), and several other Artists in Los Angeles and other third parties and when they trespassed, converted, and committed theft of Plaintiff's personal and professional properties that were essential to effectuate and perform the agreements between Plaintiff and the above-mentioned third parties. Plaintiff is continuously losing his ability to record and produce music, and has to turn down opportunities because of the wrongful conduct of Defendants.

64. Plaintiff, alleges that, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, failed to act with reasonable care when Defendants, and each of them, interfered with Plaintiff's prospective economic advantage, and interfered with contractual relations between Plaintiff, EN VOGUE, and SHEY (Artist), and several other recording Artists in Los Angeles and other third parties.

65. Plaintiff alleges that as direct and proximate results of Defendants' conduct, the business relationship between Plaintiff and EN VOGUE, and SHEY (Artist), and several other recording Artists in Los Angeles and other third parties was disrupted.

66. As direct and proximate results of Defendants' conduct, Plaintiff has been harmed in their business to an amount exceeding $ 80,000,000.00, (Eighty Million Dollars), and accruing.

67. Plaintiff alleges that WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25's wrongful conduct was a substantial factor in causing Plaintiff's harm.

68. Plaintiff alleges that Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud; thereby, justifying the awarding of exemplary and punitive damages under California Civil Code 3294.

### SIXTH CAUSE OF ACTION

### TRESPASS TO CHATTEL

(AGAINST DEFENDANTS, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC.,

CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR,

and DOES 1 Through 25)

70. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

71. At all times herein mentioned, Plaintiff, is the possessor and owner of some of the personal, professional, corporate, legal and other properties, and had the right to use and possess these and the properties of other third properties, properties referenced in Plaintiff's Exhibit "A."

72. Plaintiff alleges that Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 through 25, by doing the acts aforementioned, intentionally interfered with Plaintiff's use and possession of his personal and professional properties, without any privilege and without the consent of the Plaintiff.

73. Plaintiff alleges that Plaintiff has been harmed because of WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR interference with Plaintiff's property.

74. Plaintiff, orally and in writing, has demanded the immediate return of the above mentioned properties but Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR , and each of them has failed and refused, and continues to fail and refuse, to return the properties to plaintiff.

75. Plaintiff alleges that, Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages under California Civil Code 3294.

76. Plaintiff alleges that, Defendant's interference was a substantial factor in causing Plaintiff's harm.

77. As a proximate result of Defendants' interference and the wrongful acts herein alleged, Plaintiff has been harmed and damaged in the sum of not less than US $40,080,000.00. (Forty Million Eighty Thousand dollars) and such other amounts to be proven at trial.

//

//

//

22

## SEVENTH CAUSE OF ACTION

### REPLEVIN

(AGAINST ALL DEFENDANTS)

78. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

79. Plaintiff alleges that, Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR unlawfully seized goods and kept from Plaintiff his personal properties, including but not limited to (Exhibit "A").

80. Plaintiff further alleges that the above named Defendants were the agents, employees, servants, and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture and enterprise when they kept from and seized goods or personal properties belonging to the Plaintiff.

81. Plaintiff has made demand for the return of these properties, however, Defendants, and each of them, has refused to return Plaintiff's properties.

82. Through this action, Plaintiff seeks to replevin his property, including the property entrusted to him by other third parties. Plaintiff seeks immediate return and recovery of the property.

83. Plaintiff alleges that, Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, were the agents, employees, servants and/or the joint-ventures of KIMBERLY BARBOUR, aka KIMBERLY MARTIN- BRAGG, aka, KIMBERLY MARTIN, aka KIMBERLY BRAGG,

when they conspired to wrongfully take dominium and control over Plaintiff's and others

personal properties, including but not limited to the items in, (Exhibit "A").

84. Plaintiff alleges that Defendants act of wrongful dominion, control, and willful

interference with Plaintiff's properties have substantially interfered with Plaintiff's right of

possession and enjoyment of his, his family and others personal and business properties.

85. Plaintiff, orally and in writing, has demanded the immediate return of the above-

mentioned properties, but Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE,

INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through

25, failed and refused, and continues to fail and refuse, to return Plaintiff's personal properties to

Plaintiff.

86. As a proximate result of Defendants' conversion and the wrongful acts herein alleged,

Plaintiff has been harmed and damaged in the sum of not less than $ 70,000,000.00, (Seventy

Million Dollars), and such other amounts to be proven at trial, and Plaintiff seeks replevin of his

and others property.

87. The Defendants' acts alleged above were willful, wanton, malicious, and oppressive,

and were undertaken with the intent to defraud, and justify the awarding of exemplary and

punitive damages.

//

//

//

//

//

## EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.

### (AGAINST ALL DEFENDANTS)

88.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89.   Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

90. Plaintiff is informed and believes, and thereon alleges that by engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of *Business & Professions Code* section 17200, et seq.

91. Business & Professions Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is likely to deceive and is fraudulent in nature.  Defendants have filed false and fraudulent court documents, and have published false statements about Plaintiff and Plaintiff's ownership and possession of his and others personal properties.

92. Defendants have exercised dominion and control over Plaintiff's property without consent, unfairly, and using fraudulent business practices by Defendants, Wells Fargo. Defendants are in violation of court orders, which are known to them and published.  Defendants know that Plaintiff has not given anyone permission to inspect, control, keep, or exercise any control or dominion over his property or over the property of the others. Defendants knew when they interfered with, damaged, seized and took wrongful possession of the property, that the

property they seized included property they had no right to seize, property that was owned by other innocent third parties, and property not subject to any rights or interest of Defendant.

93. Plaintiff is informed and believes, and thereon alleges that Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25's conduct, for the reasons stated herein, is in direct violation of California Law.

94. Plaintiff alleges that Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, facilitated, aided and abetted the illegal, deceptive, and unlawful practices as alleged. Plaintiff is informed and believes that Defendant BARBOUR acts as himself, and a sole proprietor of at least two businesses.

95. Plaintiff alleges that on information and belief that, Defendants, WELLS FARGO BANK, N.A., ASSET RELIANCE, INC., CRAIG HANSEN, EDWARD D. TESTO, GEORGE BARBOUR, and DOES 1 Through 25, conspired to interfere with Plaintiff's personal properties, conspired to interfere with Plaintiff's prospective economic advantage, disparaged the name of Plaintiff, and unlawfully exercised dominium and control over Plaintiff's personal properties.

96. As more fully described above, Defendants' acts and practices are likely to deceive members of the public, as to the property of Plaintiff. This conduct is ongoing and continues to this date.

97. As more fully described above, Defendants' acts and practices are unfair and deceitful, the harm caused by their conduct outweighs any benefit that their conduct may have. This conduct is ongoing and continues to this date.

//

98. Plaintiff allege that by engaging in the above described acts and/or practices as alleged herein, Defendants violated several laws including California Business & Professions Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

99. Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors, by the conversion, and trespass of the Plaintiff's valuable properties. The scheme implemented by Defendants is designed to defraud Plaintiff and enrich the Defendants.

100. The foregoing acts and practices have caused substantial harm to Plaintiff. By reason of the foregoing, Defendants have been unjustly enriched, by collecting payments that they are not entitled to, and should be required to make restitution to Plaintiff, IVAN RENE MOORE, and others who have been harmed, and to be immediately enjoined from continuing in such practices pursuant to California Business & Professions Code sections 17203 and 17204.

101. As a direct and proximate result of the violations of California Business & Professions Code Section 17200 by Defendants conduct as alleged, Plaintiff, IVAN RENE MOORE, has been and is being damaged.

102. Plaintiff alleges that Section 17204 provides that "any person" may sue on behalf of "itself, its members, or on behalf of the general public." As such, Plaintiff brings this action under 17204, and any other applicable section.

//

//

//

//

27

### NINTH CAUSE OF ACTION

### NEGLIGENCE

### (AGAINST ALL DEFENDANTS)

103. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104. "The elements of a cause of action for negligence are well established. They are "(a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496.

105. Each Defendant by statute or by contract, has a legal duty and moral duty not to harm the Plaintiff or convert personal properties that were in lawful possession of the Plaintiff, and to use due care.

106. Plaintiff alleges that Defendants breached their duty of care owed to Plaintiff when Defendants, UNITED STATES MARSHALS, ("US MARSHALS"), WELLS FARGO BANK, N.A., and others, impermissibly took certain personal property that was in the lawful possession of Plaintiff, without notice, without due process, callously, recklessly, deceitfully as described about, in violation of the Due Process Clause of the 5th and 14th Amendment to the United States Constitution.

107. Defendants breach of their duty of care to Plaintiff was the proximate and legal cause of Plaintiff's harm.

108. Plaintiff alleges that Defendants' breach is the actual and proximate cause of Plaintiff's injury which is in excess of $80,598,000.00 and accruing.

//

28

# TENTH CAUSE OF ACTION

## FRAUD DECEIT BY CONCEALMENT

### (AGAINST ALL DEFENDANTS)

109. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

110. The elements of an action for fraud and deceit based on concealment are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did, if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 29 Cal.Rptr.3d 874].)

111. Defendants, and each of them, concealed to PLAINTIFF, the US District Court, and to the Los Angeles Superior Court, that they were aware that the property they were about to seize and did seize, was exempt from the Wells Fargo Judgement, and that some of it belonged to other third parties. They concealed to these entities that Plaintiff, Mr. Moore, did since 2012, peaceably and lawfully try to regain ownership and possession of the property, in the final judgment in BC 480013, Moore vs. Martin-Bragg. They failed to disclose and concealed that Martin-Bragg has been under at least two Court Orders to return the property. They failed to disclose that they knew the property belonged to Mr. Moore and to other third parties. This fact was public; and Mr. Moore and other third parties had filed claims in Bragg's, aka Barbour's,

two bankruptcies, one in 2014 and one in 2017. They failed to disclose that some of the property was the subject of a Judgment in Moore vs. Martin-Bragg, LASC Case. No. BC 480013. They failed to disclose that they knew the property they seized contained legal documents which evidenced the fraud on the part of Wells Fargo. They failed to disclose that Mr. Moore has always maintained throughout LASC BC 480013, that some of the property, Bragg, aka Martin-Bragg, aka Barbour, belonged to other third parties. She was aware of this from the time she converted the properties, in 2011.

112. Plaintiff alleges that the Defendants, and each of them, concealed these facts intentionally.

113. Had Plaintiff known of the ex-parte motions of Wells Fargo, and the secret and clandestine acts of all the other Defendants, and each of them, he would have appeared in the US District Court, and challenged the ex-parte with the truth.

114. Plaintiff has been tremendously damaged by this fraud, deceit, and concealment.

## ELEVENTH CAUSE OF ACTION
## VIOLATION OF US BANKING LAWS
## UNDER THE FEDERAL RESERVE ACT
(AS TO DEFENDANT WELLS FARGO)

115. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116. Plaintiff alleges that Defendant, Wells Fargo, violated US banking laws that they were required to uphold, by the filing of false statements to the Federal Reserve and the SEC, by filing false and forged documents in both the US Bankruptcy Court and the US District Court, and by the conversion and theft of Plaintiff's properties, by fraud, and by unsound business practices.

117.   Plaintiff alleges that Defendant, Wells Fargo, has been under many "Cease and Desist" orders of the Federal Reserve, and that they are in violation of such.

118.  Plaintiff has been harmed by these violations, and the harm is still occurring.

## TWELFTH CAUSE OF ACTION

## FOR CONSTRUCTIVE TRUST

### (AGAINST ALL DEFENDANTS)

119.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

120.   As a proximate result of the Defendants fraudulent misrepresentations, and otherwise wrongful conduct, as alleged herein, Plaintiff has been damaged in a sum exceeding over $80,000,000.00.

121.  By reason of the fraudulent, and otherwise wrongful manner, in which the Defendants, or any of them, obtained their alleged right, claim or interest in and to the property, Defendants, and each of them, have no legal or equitable right, claim or interest therein, but instead, Defendant, Wells Fargo, their agents and others, and/or each of the Defendants and their agents, are involuntary trustees holding said property and profits therefrom in constructive trust for Plaintiff with the duty to convey the same to Plaintiff forthwith.

//

//

//

//

//

## THIRTEENTH CAUSE OF ACTION

## FOR ACCOUNTING

### (AGAINST ALL DEFENDANTS)

122.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

123.  Plaintiff alleges an accounting is necessary because of the type of nature and niqueness of his property does not lend itself to a recovery of it, and if it is lost, stolen, or damaged or further illegally hypothecated, the defendant has to account for each and every item of Plaintiff's property. Its value is not what Defendant and third parties have listed, if they are the parties in possession of the property.

124.  Plaintiff alleges that if some of his property is lost, stolen or damaged, and accounting is needed on the balance due from the Defendant to the Plaintiff, because Plaintiff alleges his right to recover a sum certain or a sum that can be made certain by calculation.

125.  Plaintiff alleges the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable, and an accounting is the only method by which Plaintiff can ascertain the value of the properties taken.

126.  Because of the uniqueness of many of the items taken by Defendants, and by the valuations listed by some Defendants, Plaintiff disputes any and all of these lists, and demands that the Defendants be compelled to make a proper accounting. Plaintiff, Ivan Rene Moore, and others have accumulated this property over twenty years, and are the only rightful and knowledgeable sources for the value of this property.

Case 2:17-cv-04828-GPW-GJS Document 1 Filed 06/30/17 Page 33 of 35 Page ID #:33

127. For these reasons, this Court must enjoin any sales of this property, and must compel an accounting which Plaintiff conducts. Plaintiff and others are the only source of information about this property.

## PUNITIVE DAMAGE ALLEGATION

## AGAINST ALL DEFENDANTS

128. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

129. The conduct of the Defendants, and each of them, is despicable, malicious, intentional, and is ongoing.

130. Plaintiff seeks damages pursuant to Civil Code 3294. "Malice" means that a Defendant acted with intent to cause injury or that a Defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A Defendant acts with knowing disregard when the Defendant is aware of the probable dangerous consequences of his, her, or its conduct, and deliberately fails to avoid those consequences. Defendants, and each of them, know that they are conspiring to and concealing or exercising wrongful dominion and control over Mr. Hills' and other third party property. They know that they have no rights or interest to the property of third parties who have made claims in the US Bankruptcy Court. Plaintiff alleges that Defendants' conduct was oppressive and despicable, and subjected Plaintiff, IVAN RENE MOORE, to cruel and unjust hardship, and violated his constitutional protected liberty interest.

//

33

131. Plaintiff alleges that punitive damages are warranted because Defendants' conduct was despicable, vile, base, or contemptible, and that it would be looked down on and despised by reasonable people. Furthermore, Defendants, and each of them, intentionally and willfully misrepresented or concealed material facts and did so intending to harm Plaintiff.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby request a jury trial on all causes of action.

**WHEREFORE**, Plaintiff prays judgment against all Defendants, and each of them, as follows:

1. For compensatory damages in the sum of $90,750,000.00 for Conversion;
2. For compensatory damages in the sum of $60,649,000.00 for Intentional Interference with Prospective Economic Advantage;
3. For compensatory damages in the sum of $80,598,000.00 of Negligence Interference with Prospective Economic Advantage;
4. For compensatory damages in the sum of $80,546,000.00 for Trespass To Chattel
5. For compensatory damages in the sum of $90,750,000.00 for Replevin
6. For the sum of $86,248,000.00 for Violation of California B&P Code § 17200 et seq.

7. CONSTRUCTIVE TRUST
   For a declaration that Defendants and each of them hold the Plaintiff's property as constructive trustees for the benefit of the Plaintiff and others;
8. For an accounting and inventory, immediately, of what property Defendants, and each of them, have taken wrongfully;
9. For costs of suit herein incurred;
10. For interest allowed by law;

11. For such other and further relief as the court may deem lawful and proper.

Dated: June 29th , 2017

IVAN RENE MOORE
Plaintiff, In Propria Persona

# VERIFICATION OF IVAN RENE MOORE

I, **IVAN RENE MOORE** declare as follows:

    1.    I am the Plaintiff in the above action.

    2.    I have personal knowledge of all the matters stated in this Complaint, and they are true as pleaded.  I have read the above Complaint and the factual statements contained therein, and they are made of my own personal knowledge, except those matters stated to be on information and belief, which I believe to be true.

    I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

**Dated**: June 29th , 2017

_____

**IVAN RENE MOORE**

Plaintiff in Propria Persona

# EXHIBIT

# C

1  MICHELE SABO ASSAYAG, SBN 109540
2  JOSHUA K. PARTINGTON, SBN 275939
   ASSAYAG ❖ MAUSS
3  A Limited Liability Partnership
   2915 Red Hill Avenue, Suite A200
4  Costa Mesa, California 92626
   Telephone: (714) 427-6800
5  Fax: (714) 427-6888
   E-mail: efilings@amlegalgroup.com
6
7  Attorneys for Judgment Creditor,
   WELLS FARGO BANK, N.A.
8
9          UNITED STATES DISTRICT COURT
          CENTRAL DISTRICT OF CALIFORNIA
10

11  WELLS FARGO BANK, N.A.,          )  Case No. 2:17-cv-2312 VAP (JEMx)
                                     )
12                  Plaintiff,       )  **INVENTORY AND**
                                     )  **VERIFICATION OF ITEMS**
13      vs.                          )  **SEIZED PURSUANT TO ORDER**
                                     )  **RE: INSTRUCTION TO U.S.**
14  RUFFTOWN ENTERTAINMENT           )  **MARSHAL TO LEVY UPON**
    GROUP, INC., RADIO MULTI         )  **PERSONAL PROPERTY OF**
15  MEDIA, INC., RENE MOORE MUSIC,)  **JUDGMENT DEBTORS;**
    INC., and IVAN RENE MOORE,       )  **MEMORANDUM OF POINTS AND**
16                                   )  **AUTHORITIES**
                                     )
17                  Defendants.      )  [Declaration of Kimberly Barbour and
                                     )  Request for Judicial Notice
18                                   )  concurrently-filed herewith]
                                     )
19                                   )
                                     )
20                                   )
                                     )
21                                   )
                                     )
22                                   )
    _____ )
23

24          Pursuant to this Court's Order Denying the Motion of Ivan Rene Moore to

25  Vacate, Recall Levy, or Void Order of Instruction to U.S. Marshal, Judgment Creditor,

26  Wells Fargo Bank, N.A. ("Wells Fargo" or "Bank"), hereby submits the following

27  Inventory and Verification of Items Seized Pursuant to Order re: Instruction to U.S.

28  Marshal to Levy Upon Personal Property of Judgment Debtors ("Verification Brief").

ASSAYAG ❖
MAUSS                          -1-

1  This Verification Brief is made upon the grounds that Wells Fargo has a secured and
2  perfected interest in the subject personal property identified within the Verification
3  Brief and belonging to Ivan Rene Moore, Rufftown Entertainment Group, Inc., Radio
4  Multi Media, Inc., and/or Rene Moore Music, Inc. (collectively, the "Judgment
5  Debtors"). This Verification Brief is also made upon the grounds that Wells Fargo, a
6  judgment creditor of Judgment Debtors, is owed no less than $7,136,505.63 and
7  therefore, is entitled to execute upon Judgment Debtors' assets and apply the proceeds
8  from the sale of those assets to the amount due and owing under the Judgment, subject
9  to the procedures provided under 28 U.S.C. § 3203.

10  This Verification Brief is based upon the attached Memorandum of Points
11  and Authorities, the concurrently-filed declaration of Kimberly Barbour, the
12  concurrently-filed Request for Judicial Notice, the previously filed Notice of Levy
13  [Document Number 29], the previously filed declaration of Karen Troutman [Document
14  Number 31], the previously filed declaration of Edward Testo [Document Number 32]
15  and all of the pleadings, files, and records in this case.

16

17  DATED: June 16, 2017            ASSAYAG ❖ MAUSS
                                    A Limited Liability Partnership
18

19

20                                 By: /s/ *Joshua K. Partington*
                                       JOSHUA K. PARTINGTON
21                                 Attorneys for Judgment Creditor,
                                   WELLS FARGO BANK, N.A.
22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     FACTUAL BACKGROUND.

On or about May 11, 2015, the United States District Court for the Eastern District of Wisconsin entered an Amended Judgment ("Judgment") in favor of Judgment Creditor, Wells Fargo Bank, N.A. ("Wells Fargo" or "Bank"), and as against Ivan Rene Moore, Rufftown Entertainment Group, Inc., Radio Multi Media, Inc., and Rene Moore Music, Inc. (collectively, the "Judgment Debtors"). See, Request for Judicial Notice ("RJN"), Exhibit "1." The Judgment against Judgement Debtors is for the sum of $7,106,037.28. Id. Additionally, the Judgment provides that Wells Fargo "may replevin the intangible property, personal property, royalties, profits and other collateral […]." Id. On or about July 14, 2016, the United States District Court for the Central District of California registered the Judgment in Case Number 2:16-mc-00093-UA. See, RJN, Exhibit "2." On or about August 11, 2016, a Notice of Judgment Lien, as against Judgment Debtors, was filed with the California Secretary of State, as document number 16-7542149322 ("Notice of Lien"). See, RJN, Exhibit "3."

On or about September 28, 2016, Kimberly Barbour, aka Kimberly Martin-Bragg ("Ms. Barbour"), filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California, thereby initiating Case Number 2:16-bk-22878-BR. Ms. Barbour was in possession of certain personal property that is subject to replevin and/or repossession pursuant to Wells Fargo's rights under the Judgment. See, Declaration of Kimberly Barbour ("Barbour Decl."), ¶¶ 4-6. On or about December 21, 2016, Wells Fargo filed a Motion for Relief from the Automatic Stay with respect to the personal property. See, RJN, Exhibit "4." Ivan Rene Moore[1] ("Mr. Moore"), among others, was provided with notice of Wells Fargo's Motion for Relief from the Automatic Stay and further objected to the Motion. Id. On

---

[1] On or about October 9, 2012, Ivan Rene Moore was designated a Vexatious Litigant as defined by California Code of Civil Procedure § 391, et seq. See, RJN, Exhibit "10," Page 2. As such, Mr. Moore's name appears on the Vexatious Litigant List maintained by the Judicial Council of California. See, RJN, Exhibit "11."

-1-

INVENTORY AND VERIFICATION OF ITEMS SEIZED

1    or about January 19, 2017, in spite of oral argument by Ivan Rene Moore in opposition

2    to Wells Fargo's Motion for Relief from the Automatic Stay, the Motion for Relief from

3    the Automatic Stay was granted, thereby terminating the automatic stay as to Wells

4    Fargo with respect to the personal property of Judgment Debtors and further permitting

5    Wells Fargo to exercise all of its rights and pursue all of its remedies with respect to its

6    security interest in and to the personal property of Judgment Debtors held at the

7    residence of Ms. Barbour. See, RJN, Exhibits "5" and "6."

8             On or about February 3, 2017, the United States District Court for the

9    Central District of California issued Writs of Execution in favor of Wells Fargo and as

10    against Judgment Debtors. See, RJN, Exhibit "7." In connection with the levy upon the

11    Writs of Execution and in coordination with the collection of the personal property of

12    Judgment Debtors from the residence of Ms. Barbour, on or about March 10, 2017,

13    Wells Fargo filed, with this Court, an Ex Parte Application for Order re: Instruction to

14    U.S. Marshal to Levy Upon Personal Property (the "Ex Parte Application"). See, RJN,

15    Exhibit "8." On or about March 27, 2017, this Court entered an Order re: Instruction to

16    U.S. Marshal to Levy Upon Personal Property of Judgment Debtors ("Order re: Levy").

17    See, RJN, Exhibit "9." The Order re: Levy authorized the U.S. Marshal to seize those

18    items of personal property listed in the Ex Parte Application (the "Authorized Items").

19    See, RJN, Exhibit "5." On or about April 20, 2017, the U.S. Marshal levied upon the

20    personal property of Judgment Debtors in accordance with the Order re: Levy[2]. See,

21    Barbour Decl., ¶ 4; Declaration of Karen Troutman[3] ("Troutman Decl.") ¶ 3, Exhibit

22    "1"; Declaration of Edward Testo[4] ("Testo Decl.") ¶ 2, Exhibit "1." A designation of

23    the items seized by the U.S. Marshal (the "Collected Property") is set forth in

24    Section III, below, as well as attached as Exhibit "1" to the previously filed Notice of

25

26    [2] A true and correct listing of the personal property collected by the United States Marshal ("Collected Property") is attached as Exhibit "1" to the Notice of Levy, filed with the Court on or about June 8, 2017 as Document Number 29.

27    [3] The Declaration of Karen Troutman, and the exhibits thereto, were filed with this Court on or about June 8, 2017, as Document Number 31.

28    [4] The Declaration of Edward Testo, and the exhibits thereto, were filed with this Court on or about June 8, 2017, as Document Number 32.

1   Levy.  [Document Number 29, Exhibit "1."]   Wells Fargo is currently holding the

2   personal property of Judgment Debtors as the Court-ordered substitute custodian, and,

3   on June 8, 2017, filed a Motion for Order re: Sale of Personal Property of Judgment

4   Debtors ("Motion re: Sale").  [Document Numbers 28-33].   Moreover, Wells Fargo

5   provided notice of the Motion re: Sale to those parties previously identified by Mr.

6   Moore as alleged interest-holders in the personal property.  Id.

7

8   ## II.   EVIDENCE OF OWNERSHIP BY JUDGMENT DEBTORS.

9          As a threshold matter, Mr. Moore has taken inconsistent positions from

10  case to case in respect of the ownership interest he has in the Authorized Items and the

11  Collected Property.  Mr. Moore recently stated, "I am not the owner to the majority of

12  the subject property[…]."   See, Motion for Sanctions Pursuant to FRCP Rule 11

13  [Document Number 21] ("Rule 11 Motion"), page 16, lines 26-27.   However, Mr.

14  Moore's statements disclaiming ownership of the Authorized Items and the Collected

15  Property are conclusively contradictory to previous statements he has made in other

16  court proceedings concerning the personal property at issue.

17         First, Mr. Moore recently represented that he owned the Authorized Items

18  and the Collected Property when he filed a Motion for Order to Inspect, Itemize and

19  Collect Plaintiff's Personal Property in the Los Angeles County Superior Court

20  ("Motion to Inspect") wherein Mr. Moore, in making a request to collect the Authorized

21  Items and Collected Property, continually stated that he needed "his property" back,

22  which was located at the Residence.  See, RJN, Exhibit "14."   Mr. Moore further

23  represented in the Motion to Inspect that "[a]ll this property has been determined to be

24  Mr. Moore's by both a jury and Judge Rosenblatt and the California court of Appeals

25  Second District."  Id. at p. 6.  Therefore, according to Mr. Moore's Motion to Inspect,

26  as of May 18, 2016, the Authorized Items and the Collected Property were owned by

27  Mr. Moore.

28

ASSAYAG ✤
MAUSS

-3-

1    Second, Mr. Moore represented in his Chapter 11 bankruptcy petition, filed

2 on or about October 26, 2016, that the Authorized Items and the Collected Property,

3 which included "my music production and broadcast studio, and all my equipment

4 possessions [he] acquired over [his] lifetime" and which were located at the Residence,

5 were assets of Mr. Moore's <u>personal</u> bankruptcy estate. <u>See</u>, RJN, Exhibit "12," page

6 12, lines 4-6[5]. Mr. Moore further stated, in his Chapter 11 bankruptcy petition, that "I

7 have been without my studio and professional property since 2012" in referencing the

8 musical equipment and personal property located at the real property located at 6150

9 Shenandoah Avenue, Los Angeles, California 90056 (the "Residence"). <u>Id</u>. at page 12,

10 lines 24-26. Therefore, according to Mr. Moore's own bankruptcy filings, as of

11 October 26, 2017, the Authorized Items and the Collected Property were owned by Mr.

12 Moore.

13    Third, Mr. Moore recently provided this Court with evidence that he is the

14 true owner of the Authorized Items and the Collected Property. In Mr. Moore's recent

15 Rule 11 Motion, Mr. Moore himself attached a 2013 Order from the Los Angeles

16 County Superior Court, conclusively evidencing that the Authorized Items and the

17 Collected Property are owned by Mr. Moore. <u>See</u>, Rule 11 Motion [Document Number

18 21], pages 21-26. As such, and according to the 2013 Order provided by Mr. Moore,

19 the Authorized Items and the Collected Property have been owned by Mr. Moore since

20 he was evicted from the Residence in 2012.

21    Fourth, Mr. Moore has a storied litigation history with his former domestic

22 partner, Ms. Barbour. Ms. Barbour is the owner of the Residence. <u>See</u>, Barbour

23 Decl., ¶ 1. Ms. Barbour currently resides at the Residence and has resided and been in

24 continuous possession of the Residence, since 2002. <u>See</u>, Barbour Decl., ¶ 2. Mr.

25 Moore resided with Ms. Barbour at the Residence from 2002 to 2010. <u>See</u>, Barbour

26

27    [5] Mr. Moore's Chapter 11 bankruptcy case was dismissed by the United States Bankruptcy Court on December 13, 2016.
Wells Fargo respectfully requests that the Court review the Bankruptcy Court's opinion in connection with the dismissal of
Mr. Moore's Chapter 11 bankruptcy case as its contents are noteworthy with respect to Mr. Moore's penchant for litigation
28   aimed at the frustration of the judicial process. <u>See</u>, RJN, Exhibit "13."

-4-

1   Decl., ¶ 3.  The Authorized Items and the Collected Property have been located and

2   stored at the Residence since at least 2011.  See, Barbour Decl., ¶ 5.  Pursuant to the

3   personal knowledge of Ms. Barbour, which is based upon her history with Mr. Moore,

4   and her continuous possession of the Residence for over fifteen years, all of the

5   Collected Property levied and seized on April 20, 2017, was owned by Judgment

6   Debtors.  See, Barbour Decl., ¶¶ 4, 6.

7            Finally, there is a pending adversary proceeding in the United States

8   Bankruptcy Court between Mr. Moore and Ms. Barbour as Adversary Case Number

9   2:16-ap-01543-BR.  In Mr. Moore's Adversary Complaint against Ms. Barbour, he

10  describes, in detail, his ownership interest in much of the Authorized Items and the

11  Collected Property, as follows:

12

13       62. Consistent with the evidence provided at trial, the debtor [Ms.
         Barbour] holds and control the creditor Ivan Rene Moore's personal
14       business and family properties referenced below:

15       SSL Solid State Recording Console (K) Series valued over
16       $450,000.00;Tape recorders; analog and Sony digital 3348 HR, 80
         Channel Pro tools system; rare and vintage microphone collections
17       valued over $350,000,00; lOOk of various software, $225k of touring
18       equipment, cash of over 250k; Classic Guitars Fender and Gibson and
         fender; Kramer Music man Basses; most every keyboard and
19       synthesizer; 6 Fender Rhodes keyboards; 3 Wurlitzer keyboard;
         Hammond b-3 organ 2 Leslie speakers, 35mm film cameras w lenses;
20       (16) Neve Eq,; all of my clothes and jewelry, complete home
21       furnishings, paintings; (9) Rolex men's watches (6) Rolex, Paiget,
         Hamilton female watches that belong to my mother (now deceased),
22       my deceased mother and father's jewelry, loose diamonds, (18) Gold
23       Bars, female (5) Carat pair shape diamond ring that belonged to my
         now deceased mother; family bearer bonds; family Pictures, family
24       birth certificates, Silver wear, China, Crystal, legal documents, deed
25       to properties in other states, complete set of California Practices
         Guides law book, legal court documents for all of my cases past and
26       present, court transcripts, radio stations clients files, Los Angeles
27       Philharmonic 150 page complete orchestration score of the song

28

-5-

Somewhere Far Away written by Rene Moore and Jo Westmoreland performed by Rene Moore with Zubin Mehta conducting; written music and string orchestrations of over 350 recorded songs, work tapes and documentation for over 750 songs, master recordings, unreleased films purchased by the judgment creditor, (25) video footage of artists sign to label and final masters, film footage, master recording and work tapes of Michael Jackson, Janet Jackson, Madonna, En Vogue, Rickey Martin, Isley Brothers, Shaquille O'Neal, Maxie Priest, Ivy Lies, Rene & Angela, Notorious Big, Jay-Z certificate of deposits, 25 movie footage sound effect library, (2) motorcycles, racing car parts, (3) Mikes racing transmissions 3 power glide, (4 )Turbo 400 transmission, 600 cubic (5) Chevy racing engines, (5) set of big Chief big block racing heads,(6) continental racing converters, Hitoque big block starters, (5) Pro tool systems HD and many others items missing. See, RJN, Exhibit "15," page 20.

Mr. Moore will no doubt attempt to claim, once again, that the Authorized Items and the Collected Property belong to others. However, based upon the foregoing evidence, Mr. Moore should be estopped from doing so. As indicated above, Mr. Moore has filed pleadings in several state and federal courts demonstrating that he is the owner of the subject personal property. Mr. Moore cannot, once again, take an inconsistent position with respect to his ownership interest in the Authorized Items and the Collected Property. It is simply unjust for Mr. Moore to, on the one hand, disclaim any ownership interest whatsoever in the Authorized Items and the Collected Property, while at same time filing signed pleadings in other courts in pursuit of rights and remedies based upon his ownership interest in the Authorized Items and the Collected Property[6]. As such, Wells Fargo submits to this Court that it has met its burden of proof, through declarations, judicially noticeable documents, as well as the admissions

---

[6] This is not the first instance in which Mr. Moore has been caught by a Court making inconsistent admissions with respect to the ownership of property. The Los Angeles County Superior Court made a similar finding in its Statement of Decision wherein it described that Mr. Moore "completely reversed" his assertion concerning his ownership interest in a piece of real property. See, RJN, Exhibit "16" pages 19-21.

-6-

1  of Mr. Moore himself, in proving that the Authorized Items and the Collected Property

2  are owned by Judgment Debtors.

3

4  **III.  INVENTORY AND VERIFICATION OF SEIZED ITEMS.**

5  A true and correct identification and designation of the Collected Property

6  is attached as Exhibit "1" to the Notice of Levy [Document Number 29]. Wells Fargo

7  has reviewed the Collected Property and confirmed that all of the personal property

8  collected is personal property of the Judgment Debtors and, further, was an Authorized

9  Item of personal property listed for seizure in the Order re: Levy. See, Barbour

10  Decl., ¶¶ 4-6. Wells Fargo hereby submits the following inventory of the Collected

11  Property which further identifies and references the specific item identified in the

12  Authorized Items.

13

| Qty. | STUDIO EQUIPMENT INVENTORY | REFERENCE |
|---|---|---|
| | | |
| lot | 80-channel analog mixing console, "SSL", mdl. 9080, with: | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (approx. 15 boxes) miscellaneous cables and parts | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (2) large boxes SSL cables | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | pile of miscellaneous SSL cables | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | SSL tower consisting of: | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (5) SOLID STATE LOGIC SSL K-Series power modules | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) power conditioner and light module, mdl. PL-8 | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) SOLID STATE LOGIC mdl. SL961 console power station module | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) TEKTRONIX NTSC generator, mdl. SPG-170A | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| lot | gig box with: | RJN, Ex. 5, pp. 3, 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) FURMAN power conditioner, Merit Series M-8L | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

| | | | |
|---|---|---|---|
| | | (1) DIGIDESIGN 888 I/O 24 audio interface | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) power strip | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) keyboard | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | miscellaneous cables | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | lot | gig box with: | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) TASCAM CD-401MK II professional CD player | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) PROTEUS/2 Orchestral EMU Systems expander module | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (2) FURMAN TX-3 turntables, 2/3-way crossover bandpass filter | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (2) BOSS CE-300 Super Chorus pedals | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) CROWN D150A power amp | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (2) BGW 7500 Proline II power amps | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) CROWN PS-200 power amp | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) Effectron ADM 1024 digital delay unit | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) TECHNICS M85 tape player | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 2 | STUDIO MASTER 8-into-4 mixers | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | OTARI MX5050 reel-to-reel tape recorder | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | ROLAND D-70 Super LA synthesizer (some frozen keys) | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | NOVATRON Remote 61SL keyboard | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | RHODES Seventy Three keyboard (poor condition - frozen keys) | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | lot | (box 120) new miscellaneous cables | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-8-

| | | | |
|---|---|---|---|
| lot | roller rack, wood, with: | | |
| | (1) FURMAN TX3 turntable 2/3-way crossover bandpass filter | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) Midi Timepiece MTP AV | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) KORG OIR/W music workstation | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) ROLAND linear synthesizer | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) PANASONIC DAT recorder, mdl. SV-3800 | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) MEDEA uninterruptible power supply | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) ROLAND digital piano, mdl. MKS-20 | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) DYNATEK disc drive | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) SOLID STATE LOGIC disc drive | RJN, Ex. 5, pp.1, 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (lot) miscellaneous cables | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | roller rack, wood, with: | | |
| | (2) FURMAN PL8 power conditioners | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) DBX Professional 900 Series outboard rack module | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) UREI 6500 power amp | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (15) patch bays | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | YAMAHA grand piano, mdl. C7, white | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | consisting of: | | |
| | (1) bass drum | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) snare drum | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) cymbal | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | miscellaneous boom stands | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | roller rack, wood, with: | | |

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | | |
|---|---|---|---|
| 1 | | (2) OMS Studio 5LX Opcode Systems midi interface | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | | (1) ROLAND SDE-3000A digital delay | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | | (1) TASCAM 122MKII tape player | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 4 | | (1) ROLAND MKS-20 digital piano | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 5 | | (2) TIMELINE Lynx time code modules | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 6 | | (1) HHB Burn-It Plus CD burner | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 7 | | (1) BRAINSTORM SR26 dual time code distributor | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 8 | | (1) MIDI time piece, 128-channels | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 9 | | (1) ROLAND Super JD/JD-990 synthesizer module | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 10 | | (1) BILTREE patch bay | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 11 | | (1) LEXICON PCM70 digital effects processor | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 12 | | (1) ELTEKON disc drive | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 13 | | (1) S760 drive | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 14 | | (1) MONSTER Power AVS2000 Pro voltage stabilizer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 15 | 2 | MCI reel-to-reel 24-track recorder | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 16 | 1 | MCI Autolocator II controller | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | 2 | WESTLAKE AUDIO speakers (middle horn deteriorated) | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 18 | lot | (14) sound catchers | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 19 | 2 | EVENT Precision 8 studio monitors | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 20 | 1 | MACKIE HRS150 sub-woofer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-10-

| | | | |
|---|---|---|---|
| 4 | ELECTROCOMPANIET Ampliwire 180 monoclass A power amplifiers | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | YAMAHA table top speakers | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | WESTLAKE AUDIO speakers (middle horn deteriorated) | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY Dash 48 reel-to-reel tape recorder with digital audio recorder/remote control unit RM-3348 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY Dash 48 Plus 48HR reel-to-reel tape recorder with digital audio recorder/remote control unit, RM-3348HR | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | DISC MAKERS Reflex Pro7 CD duplicator | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | TECHNICS SL-1200MK2 turntable | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | boxes miscellaneous used cords and cabling | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | fog machine (labeled broken) | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY mdl. Trinitron monitor | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BROTHER laser printer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | ZENITH VCR | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | WESTLAKE AUDIO speakers, large (poor condition) | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | box with computer, speakers, keyboard and printer | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | DBX 234/234XL crossover | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

ASSAYAG ❖ MAUSS

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| 1 | PHILIPS VCR | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
|---|---|---|
| 1 | Moto DTP | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | RADIO SHACK 4-channel stereo microphone mixer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY DMU-3048 digital meter unit | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY AC-MC800G AC power supply unit | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | box of old telephones | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | RCA DVD player | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY PCM-R300 high density linear A/D - D/A converter | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BOSS guitar tuner | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | TMC digital soldering station | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | KALATEL Caliber RSM1600 remote surveillance module | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 1 | drum kick pedal | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | foot pedals | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | AKG C535EB microphones | RJN, Ex. 5, p.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BEYER DYNAMIC M69N microphone | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-12-

| | | | |
|---|---|---|---|
| 1 | AVLEX DV67 microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SHURE SM58 microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SHURE Unidyne III SM57 microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SHURE Dynamic SM57 microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | SA40 adapters | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | CAD DI89 microphones | RJN, Ex. 5,p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SHURE KSM27 microphone | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | case with: | |
| | (1) SONY C-800 condenser microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) CANON T70 camera | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) NIKON N90S camera | RJN, Ex. 5, p. 6; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) TAMRON mdl. 1760 lens | RJN, Ex. 5, pp. 6; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) NIKON Speedlight SB-28 flash | RJN, Ex. 5, pp. 6; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) VIVITAR AutoThyristar 2600D flash | RJN, Ex. 5, p. 6; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | plastic organizer with 4-drawers | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 1 | BISLEY green rolling metal tool box with miscellaneous tools and parts | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 1 | digital claptrap clap machine | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-13-

| 1 | TRUE 1x4 midi thru box | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
|---|---|---|
| 1 | REALISTIC sound level meter | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | ST500 guitar tuner | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SM-1A passive direct box | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BOSS TU-100 chromatic tuner | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | TECHNICS 2-channel box | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BOSS FS-5u pedal | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | guitar pedal | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | boxes miscellaneous circuit boards/cards | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | keyboards | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | computer speakers | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | FOG system with Anvil case | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | miscellaneous computer cords | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 1 | bin miscellaneous telephone parts | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 1 | drum seat - no base | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BROTHER labeler | RJN, Ex. 5, p. 6; Barbour Decl. |

ASSAYAG ❖
MAUSS

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | | |
|---|---|---|---|
| 1 | | | ¶¶4-6. |
| 2 3 | 1 | calculator | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 4 5 | lot | (6) power strips | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 6 7 | lot | box of manuals | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 8 9 | 3 | APPLE MAC computers | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 10 | lot | (11) framed awards/plaques | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 11 12 | lot | (2) large bins of miscellaneous wiring, cables, cords, power strips | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 13 14 | 1 | EPSON printer | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 15 16 | 1 | old personal computer | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 18 | 1 | PANASONIC SV3800 DAT recorder | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 19 | 3 | external hard drives | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 20 21 | lot | box miscellaneous cables | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 22 23 | lot | box (3) personal computer monitors | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 24 25 26 | 1 | HONDA motorcycle, mdl. CBR1000F, year 1988, vin#1HESC211XJA100658, no license plate, farings are off the motorcle but present and in poor condition, rear brakes are bound (poor condition - non-operable) | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 27 28 | | BOX #1 | |
| | | - personal and legal papers | RJN, Ex. 5, p. 6; Barbour Decl. |

-15-

| | | |
|---|---|---|
| 1 | | ¶¶4-6. |
| 2 | **BOX #2** | |
| 3 | (4) DVD studio clips & effects | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 4 | (3) BETA CAM tapes, various artists | |
| 5 | (3) #64 SONY digital Betacam tapes - no markings | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 6 | (1) 4" floppy | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 7 | (4) DAT cassettes | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 8 | (2) cassette tapes | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 9 | (13) DVD studio sessions | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 10 | | |
| 11 | **BOX #3** | |
| 12 | - miscellaneous personal paperwork, mail, etc. | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 13 | | |
| 14 | **BOX #4** | |
| 15 | Box of Masters consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 16 | - blank master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | - Rene Rufftown master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 18 | - Lew Mac Rufftown master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 19 | - Black Chill - The Kush master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 20 | - Amanda master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 21 | - Amanda Rufftown master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 22 | - Black Chill master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 23 | - Rene Street Songs master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 24 | - Rene master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 25 | - Rene Street Songs master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 26 | - Rene Street Songs master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 27 | | |
| 28 | | |

-16-

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | |
|---|---|---|
| 1 | BOX #5 | |
| 2 | (47) in-studio CD sessions | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | (5) unused DAT tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 4 | Spindles of in-studio CD sessions: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 5 | (1) w/110 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 6-7 | (2) w/110 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 8 | (3) w/110 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 9 | (1) w/45 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 10 | (1) w/20 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 11-12 | BOX #6 | |
| | (52) cassette tapes made in-studio/various titles | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 13-14 | (11) VHS tapes - various in-studio sessions | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 15 | BOX #7 | |
| 16 | (25) DAT tapes - various sessions | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | (22) 4" floppy disks - no markings | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 18-19 | BOX #8 | |
| 20 | (39) DAT tapes - miscellaneous in-studio sessions | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 21 | BOX #9 | |
| 22 | - 1 bin of (23) sound tracks software for recording | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 23 | BOX #10 | |
| 24 | (37) cables, electrical adapters | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 25 | (1) 3" electric fan | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 26 | (2) iPhone chargers | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 27-28 | BOX #11 | |

-17-

| | | |
|---|---|---|
| (29) commercially released CD's - various artists | | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| **BOX #12** | | |
| (22) blank CD's | | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | | |
| **BOX #13** | | |
| (5) large digital audio master tapes - labeled miscellaneous artists | | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) BELINDA LEWIS large digital audio tape | | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. . |
| (1) HIPNOTIE LOVE master tape | | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) blank tape reel | | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | | |
| **BOX #14** | | |
| Box software consisting of: | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) PRO DRUM sample software, "BATTERY 2" | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) PRO TOOLS Version 4.2 floppy disc | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) ELAB IGNITION virtual instrument series software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) APPLE LOGIC studio software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) WIZOO/VST INSTRUMENTS virtual guitarist software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) MOTU BPM BEAT Production Machine software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) WAVES RENAISSANCE MAXX NATIVE software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) APPLE MAC OSX TIGER software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) MOTU Electric Keys software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) EMAGIC LOGIC PRO6 Upgrade A software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) BFD Premium Acoustic Drum module | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) VINTAGE LINE Pro 53 software | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) ROLAND Expansion board SRX Series SRX08 - Platinum Trax | | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-18-

ASSAYAG ❖
MAUSS

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | |
|---|---|
| **BOX #15** | |
| - VIRTUAL GUITAR Electric Edition (Steinberg) - software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| - EMAGIC VINTAGE Collection EVB3, EVDC, EVP88 - software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #16** | |
| VHS Tapes - RUFFTOWN/MAYBACH/LIGHTNING MEDIA/RYKO DISTRIBUTION consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (25) Adina Howard VHS Tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| - The Second Coming, Misc. 30-second spots | |
| (2) CD's - SYLK-E FYNE RUFFTOWN ENT. SNOOP DOGG, BILLY BOY, JT MONEY, LUKEE & NICOLE RENEE | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (7) Adina Howard CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (3) Rene CD's - Rufftown | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #17** | |
| (12) AMBIENCE sound effects CD's 3001-3012 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (5) WARNER BROS. sound effects library WB01-WB05 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (5) SOUND IDERS sound effects library 4001-4005 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (28) SOUND IDES sound effects library 1001-1028 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (4) SOUND IDES sound effects library 2007, 2010, 2012, 2013 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (3) FUN WITH SOUND EFFECTS | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) SOUNDS OF FASCINATING ANIMAL WORLD | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (2) recordable CD's | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (6) LUCAS FILM sound effects library LF01-LF06 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (5) UNIVERSAL STUDIOS effects library US01-US05 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) TDK VHS tape | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #18** | |

-19-

| | | | |
|---|---|---|---|
| 1 | | (6) picture reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 2 | | | |
| 3 | | BOX #19 | |
| 4 | | tape reel masters consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 5 | | - RENE STREET SONGS master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 6 | | - AMANDA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 7 | | - AMANDA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 8 | | - RENE & ANGELA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 9 | | - blank master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 10 | | - RENE STREET SONGS master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 11 | | - RENE & ANGELA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 12 | | - unmarked master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 13 | | - miscellaneous artist master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 14 | | (2)blank master tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 15 | | (4) SYLK-E FYNE records | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 16 | | - SILK-E FYNE master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | | | |
| 18 | | | |
| 19 | | BOX #20 | |
| 20 | | Software consisting of: | |
| 21 | | (1) FINAL CUT Pro4 - APPLE | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 22 | | (1) LOGIC PRO 7 - APPLE | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 23 | | (1) BFD Drum Module XFL | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 24 | | | |
| 25 | | BOX #21 | |
| 26 | | DESTINY'S CHILD TAPES - (23) black box - DM60 tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 27 | 2 | filing cabinets, 4-drawer, metal, vertical with personal paperwork and files | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 28 | | | |

ASSAYAG ❖ MAUSS

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | BOX #22 | |
|---|---|---|
| | (1) 2004 MOTION (APPLE) - unopened | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Real Time Graphic Design (MAC G5 G4 with card) | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) 2007 HD final cut studio 2 (MAC) - unopened | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) 2005 Shake 4 (MAC/APPLE) - unopened | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Advanced Digital Compositing | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | BOX #23 | |
| | (14) film reels/KODAK film reels | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | BOX #24 | |
| | box of masters consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - VJ TV master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - (2) RUFFTOWN SYLK-E FYNE featuring SNOOP DOG & BIZZY DOVE master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - HIP HOP NATION master/MY BOY EDDIE | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - GROOVE PALLER master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - DISIFER master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - NECFC DFF in FLORIDA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - (3) YA STYLE RUFFTOWN masters | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - RUFFTOWN SYLK-E FYNE master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - WILL POWER master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - IN THE MIX PEEP SHOW master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - LUKEE master reel | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | BOX #25 | |
| | (240) ADAM LAMBERT CD's - shrink-wrapped | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |

-21-

| BOX #26 | |
|---|---|
| (240) ADAM LAMBERT CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #27 | |
| (250) ADAM LAMBERT CD's - shrink-wrapped | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #28 | |
| (1) flexible disk cartridge | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (3) white box music reels | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) sound recording tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) music reel - POLY GRAM | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) music reel - RENE & ANGELA | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) FIRST LOVE master reel | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) STREET CALLED - master reel | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) master reel - RENE & ANGELA | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #29 | |
| (250) ADAM LAMBERT CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #30 | |
| (1) case floppy discs | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| (1) MINIMOOG V - ARTURIA | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) bag mic parts | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| (1) DAT digital audio tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) STYLUS vinyl groove module | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) ATMOSPHERE - dream synth module | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) TRILOGY - total bass module | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #31 | |

-22-

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | |
|---|---|---|
| 1 | software consisting of: | |
| 2 | (1) PRO TOOLS - Digi Rack Plug-Ins | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | (1) AUTO-TUNE 4 set | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 4 | (1) WASP bar code fontware | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 5 | (1) PRO TOOLS - HD8 book set | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 6 | (1) PRO TOOLS books | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 7 | (1) JUPITER-8V - ARTURIA | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 8 | | |
| 9 | BOX #32 | |
| 10 | (5) KODAK reels, Vision-2 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 11 | | |
| 12 | BOX #33 | |
| 13 | (26) miscellaneous CD's | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 14 | BOX #34 | |
| 15 | software consisting of: | |
| 16 | - LAVA 2000 AD 01 AdV2.0 - Music in Motion | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | - Alpha Dance - Producer Remixer Production Tool | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 18 | - Synclavier sample | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 19 | | |
| 20 | - Tekno Industrial CD | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 21 | - Adat XT reference manual | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 22 | - CANON Power Shot SD552 owner manual | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 23 | - APPLE software | RJN, Ex. 5, p. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 24 | - A/D converter HDA-1, AIWA | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 25 | - Project II - WINDOWS NT Q4, 1998 (Digidesign) | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 26 | - Transfuser (Digidesign) | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 27 | | |
| 28 | - VST to Audio unit adapter | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. |

-23-

| | | |
|---|---|---|
| 1 | | 15; Barbour Decl. ¶¶4-6. |
| 2 | - STRIKE Ultimate Virtual drummer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | - BFD2 upgrade expansion | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 4 | - Propellerhead (REASON) | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 5 | - Wirelegg Mouse | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 6 | | |
| 7 | BOX #35 | |
| 8 | (4) RENE & ANGELA music reels | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 9 | | |
| 10 | BOX #36 | |
| 11 | ADINA HOWARD 2004 mixed VHS, CD's, DVD's - Second Coming | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 12 | | |
| 13 | BOX #37 | |
| | (11) SYLK-E FYNE film reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 14 | | |
| 15 | BOX #38 | |
| 16 | (4) GP9 Studio master audio tapes | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 17 | (2) Monster Power Pro-7000 (power conditioner) | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 18 | | |
| 19 | BOX #39 | |
| | (240) ADAM LAMBERT CD's - full case | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 20 | | |
| 21 | BOX #40 | |
| 22 | (2) miscellaneous random boxes with parts - blue top | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 23 | (1) wood-looking speaker part | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 24 | (3) SONY disc reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 25 | (1) black box with (15) miscellaneous CD's & (8) floppy discs | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 26 | (1) wireless video receiver | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 27 | (1) tape wrapped in foil - Bruce Swedien | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 28 | | |

ASSAYAG ✤
MAUSS

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | |
|---|---|---|
| 1 | (1) REALISTIC cassette player | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 2 | (1) MRL - Calibration tape | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 3 | (7) miscellaneous reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 4 | (1) VHS tape | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 5 | (1) SONY Magnet-Optical disc | RJN, Ex. 5, p. 6; Barbour.Decl. ¶¶4-6. |
| 6 | (41) miscellaneous CD's | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 7 | | |
| 8 | BOX #41 | |
| 9 | (66) miscellaneous floppy discs | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 10 | (20) DVC's - digital video cassettes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 11 | (9) miscellaneous VHS tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 12 | (1) stack of miscellaneous CD's | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 13 | (4) GP9 red reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 14 | (1) 996 audio mastering tape - artist - SLAVE MASTER | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 15 | (1) GP9-9 reel - artist - TARYN SCALI | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 16 | (5) GP9 reels - artist - RENE | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | (2) FOTO KEM - film and video reels | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 18 | (1) SCOTCH - 250 audio recording tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 19 | (1) SONY - dash audio master tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 20 | | |
| 21 | BOX #42 | |
| 22 | SYLK-E FINE - Flyers photos | |
| 23 | (11) blue box master tapes | |
| 24 | (70) black box DA8 tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 25 | (6) miscellaneous CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 26 | (1) VHS cassette | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 27 | (4) miscellaneous tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. |
| 28 | | |

-25-

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | |
|---|---|---|
| | | 15; Barbour Decl. ¶¶4-6. |
| | (3) miscellaneous discs | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (4) KCA - SONY tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (33) SYLK-E FYNE records | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #43** | |
| | (81) miscellaneous CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (2) miscellaneous DVD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #44** | |
| | (1) VIVITAR camera | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (200) blank CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) VHS tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (200) miscellaneous software CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (100) miscellaneous software CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (60) miscellaneous music CD's, various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #45** | |
| | (6) GP9 blank Quantegy tapes - grand master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #46** | |
| | (72) RUFFTOWN - DAT cassettes - SYLK-E FYNE | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (60) miscellaneous floppy discs | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (4) cassettes - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (3) miscellaneous CD's - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) PPG Wave 2.V Wavetable for VST | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (18) miscellaneous VHS tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |

ASSAYAG ❖
MAUSS

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| BOX #47 | |
|---|---|
| (47) miscellaneous music CD's - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| miscellaneous books | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (60) TDK - IBM formatted discs | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #48 | |
| (15) miscellaneous cassette tapes - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (4) miscellaneous VHS tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #49 | |
| Software consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) Komplete 6 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) CS-80V | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

Dated: June 16, 2017

ASSAYAG ❖ MAUSS
A Limited Liability Partnership


By: /s/Joshua K. Partington
    JOSHUA K. PARTINGTON
Attorneys for Judgment Creditor,
WELLS FARGO BANK, N.A.

ASSAYAG ❖
MAUSS

INVENTORY AND VERIFICATION OF ITEMS SEIZED

1

## PROOF OF SERVICE

2

3    I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.
My business address is: 2915 Red Hill Avenue, Suite A200, Costa Mesa, CA 92626.

4

5    A true and correct copy of the foregoing document entitled (specify): **INVENTORY AND
VERIFICATION OF ITEMS SEIZED PURSUANT TO ORDER RE:
INSTRUCTION TO U.S. MARSHAL TO LEVY UPON PERSONAL PROPERTY
OF JUDGMENT DEBTORS; MEMORANDUM OF POINTS AND AUTHORITIES**
will be served or was served (a) on the judge in chambers in the form and manner required
by LBR 5005-2(d); and (b) in the manner stated below:

6

7

8    **1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING
(NEF):**  Pursuant to controlling General Orders and LR, the foregoing document will be
served by the court via NEF and hyperlink to the document.  On **June 16, 2017**, I checked
the CM/ECF docket for this case and determined that the following persons are on the
Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

9

10

11

12

13    • **Michele Sabo Assayag:** efilings@amlegalgroup.com
• **Byron B Mauss:** byronm@amlegalgroup.com,efilings@amlegalgroup.com
• **Joshua Kenneth Partington:** efilings@amlegalgroup.com
• **Andrew K Stefatos:** stefatosandrew@gmail.com

14

15

16                              ☐    Service information continued on attached page

17

18    **2.  SERVED BY UNITED STATES MAIL:**  Pursuant to F.R.Civ.P. 5 and/or controlling
LR, on **June 16, 2017**, I served the following persons and/or entities at the last known
addresses in this case by placing a true and correct copy thereof in a sealed envelope in the
United States mail, first class, postage prepaid, and addressed as follows. Listing the judge
here constitutes a declaration that mailing to the judge will be completed no later than 24
hours after the document is filed.

19

20

21

22    Ivan Rene Moore
1236 Redondo Boulevard
Los Angeles, CA 90019

23

24

25                              ☐    Service information continued on attached page

26

27

28

SSAYAG ❖
MAUSS

1    **3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE**
2    **TRANSMISSION OR EMAIL (state method for each person or entity served):**
     Pursuant to F.R.Civ.P. 5 and/or controlling LR, on _____, **2017**, I served the following
3    persons and/or entities by overnight mail service as follows.  Listing the judge here
     constitutes a declaration that personal delivery on, or overnight mail to, the judge will be
4    completed no later than 24 hours after the document is filed.
5

6                                ☐     Service information continued on attached page

7    I declare under penalty of perjury under the laws of the United States that the foregoing is
8    true and correct.

9    June 16, 2017              ISABEL DELGADO              /s/ Isabel Delgado
10   Date                       Printed Name               Signature

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT

# D

In accordance with the verdict of the jury, the Court renders judgment for Plaintiff IVAN RENE MOORE against KIMBERLY MARTIN-BRAGG on the causes of action for trespass to chattel and conversion and for Defendant KIMBERLY MARTIN-BRAGG on the Civil Code section 1965 cause of action. The Court awards judgment to Plaintiff IVAN RENE MOORE against Defendant KIMBERLY MARTIN-BRAGG in the sum of three million, one hundred and fifty thousand dollars ($3,150,000.00) with interest thereon together with costs in the amount of $_____.

The jury recommends that Plaintiff IVAN RENE MOORE is entitled to the return of personal property specifically identified, to wit, clothing, shoes, kitchen equipment, personal property, piano, SSLK console, Masters, '71 Camaro, personal legal documents and recommends a reduction of the verdict to six hundred fifty thousand dollars ($650,000) should the property be returned.

The Court follows the recommendation of the jury that IVAN RENE MOORE be entitled to the return of his personal property, which the Court finds includes all personal property that was proved at trial to be at 6150 Shenandoah at the time IVAN RENE MOORE was evicted.

The Court grants Plaintiff IVAN RENE MOORE's request for return of property and orders KIMBERLY MARTIN-BRAGG to return IVAN RENE MOORE'S clothing, shoes, kitchen equipment, personal property, piano, SSLK console, masters, '71 Camaro, and personal legal documents consistent with the evidence presented at trial. This order provides that IVAN RENE MOORE is entitled to the return of all of said property in KIMBERLY MARTIN-BRAGG'S possession or control including that which is in storage. KIMBERLY MARTIN-BRAGG, her agents and anyone acting on her behalf are ordered not to sell, give away, damage or keep from IVAN RENE MOORE any of the property that is ordered to be returned. KIMBERLY MARTIN-BRAGG is ordered to have the property returned to IVAN RENE MOORE.

5

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SUPERIOR COURT OF THE STATE OF CALIFORNIA   **NOV 08 2013**

FOR THE COUNTY OF LOS ANGELES   Sherri R. Carter, Executive Officer/Clerk

By Jeff W. Lipp, Deputy

|  |  |
|---|---|
| IVAN RENE MOORE, | ) Case No. BC480013 |
| | ) |
| Plaintiff, | ) Interlocutory |
| | ) Judgment |
| | ) |
| v. | ) |
| | ) |
| | ) |
| KIMBERLY MARTIN-BRAGG | ) |
| Defendant. | ) |
| | ) |

This action came on regularly for trial on July 15, 2013, in Department 40 of the Los Angeles Superior Court, the Honorable Michelle R. Rosenblatt, Judge presiding. Plaintiff IVAN RENE MOORE appeared *in propria persona* and Defendant KIMBERLY MARTIN-BRAGG appeared by attorney Thomasina M.Reed, Esq.

On October 19, 2012, the Court had granted a motion to consolidate BC480013 with BC483652. On July 15, 2013, at the request of Plaintiff, and with no objection from Defendant Martin-Bragg the Court bifurcated the causes of action for trespass to chattel, conversion of personal property, and Civil Code section 1965 from the remaining causes of action in BC483652 and the trial was heard as to those causes of action alone.

A jury of 12 persons was regularly impaneled and sworn. Witnesses were sworn and testified. The Court granted Plaintiff's request to amend the complaint to conform to proof to add a prayer for the return of the personal property. After hearing the evidence and arguments of counsel, the jury was duly instructed by the Court and the cause was submitted to the jury, with directions to return each special verdict and to include a recommendation (advisory verdict) to the Court whether the property should be returned and if so, the jury's recommendation as to the reduction in damages to be awarded. The

1

jury was instructed to complete the verdicts on the trespass to chattel and on the conversion but that the damages award is in the alternative.

On the conversion cause of action, the jury verdict was as follows:

1. Did Ivan Rene Moore own/possess/have a right to possess any of the following items:

   (a) Clothing, shoes, kitchen equipment, and other personal property? YES

   (b) Piano: YES

   (c) One or more of the following: automobiles, 1 motorcycle, auto tools, auto parts? YES

   (d) Recording Console SSLK? YES

   (e) Music, Sound and Recording Equipment? YES

   (f) Musical Instruments? YES

   (g) Business property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions? NO

   (h) Masters? YES

2. Did Kimberly Martin-Bragg intentionally and substantially interfere with any of Ivan Rene Moore's property by taking possession of/preventing Ivan Rene Moore from having access to, or destroying, or refusing to return any of items to which you checked "yes" in question 1 after Ivan Rene Moore demanded its return? YES

3. Did Ivan Rene Moore consent? NO

4. Was Ivan Rene Moore harmed? YES

5. Was Kimberly Martin-Bragg's conduct a substantial factor in causing Ivan Rene Moore's harm? YES

6. What are Ivan Rene Moore's damages?

   a. For fair market value of the property:  $2.5 million ($2,500,000.00)

   b. For lost profits:                        $650,000

   Total:                                      $3,150,000

2

7. Do you recommend that the Court order Kimberly Martin-Bragg to return any of the items checked YES in Question 1 to Ivan Rene Moore instead of awarding some or all of the damages in 6a?  YES

8. If your answer to question 7 is yes, which items do you recommend the Court order to be returned?  Clothing, shoes, kitchen equipment, personal property, piano, SSLK console, masters, '71 Camaro, personal legal documents.

9. If the property in question 8 is returned to Ivan Rene Moore, by what amount, if any should the damages be reduced?  $2.5 million

On the trespass to chattel cause of action, the jury verdict was as follows:

1. Did Ivan Rene Moore own/possess/have a right to possess any of the following items:

(a) Clothing, shoes, kitchen equipment, and other personal property?  YES

(b) Piano:  YES

(c) One or more of the following: automobiles, 1 motorcycle, auto tools, auto parts? YES

(d) Recording Console SSLK?  YES

(e) Music, Sound and Recording Equipment?  YES

(f) Musical Instruments?  YES

(g) Business property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions?  NO

(h) Masters?  YES

2. Did Kimberly Martin-Bragg intentionally interfere with Ivan Rene Moore's use or possession of any of Ivan Rene Moore's property or damage his property?  YES

3. Did Ivan Rene Moore consent?  NO

4. Was Ivan Rene Moore harmed?  YES

5. Was Kimberly Martin-Bragg's conduct a substantial factor in causing Ivan Rene Moore's harm?  YES

6. What are Ivan Rene Moore's damages?

a. For fair market value of the property:  $2.5 million ($2,500,000.00)

7. Do you recommend that the Court order Kimberly Martin-Bragg to return any of the items checked YES in Question 1 to Ivan Rene Moore instead of awarding some or all of the damages in 6a? YES

    8. If your answer to question 7 is yes, which items do you recommend the Court order to be returned? Clothing, shoes, kitchen equipment, personal property, piano, SSLK console, masters, '71 Camaro, personal legal documents.

    9. If the property in question 8 is returned to Ivan Rene Moore, by what amount, if any should the damages be reduced? $2.5 million

On the Civil Code section 1965 cause of action, the jury verdict was as follows:

    1. Did Ivan Rene Moore own/possess/have a right to possess any of the following items:

    (a) Clothing, shoes, kitchen equipment, and other personal property? YES

    (b) Piano:   YES

    (c) One or more of the following: automobiles, 1 motorcycle, auto tools, auto parts? YES

    (d) Recording Console SSLK? YES

    (e) Music, Sound and Recording Equipment?  YES

    (f) Musical Instruments? YES

    (g) Business property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions? NO

    (h) Masters?  YES

    2. Was the property owned, possessed or which Ivan Rene Moore had the right to possess in 6150 Shenandoah at the time Ivan Rene Moore vacated the premises? YES

    3. Did Ivan Rene Moore request from Kimberly Martin-Bragg or her attorney, in writing, within 18 days of vacating 6150 Shenandoah Avenue, the surrender of the personal property?  YES

    4. Did the written request include a description of the personal property and specify a mailing address of Ivan Rene Moore? NO

4

Additionally, if the items, or any of them, are not returned, IVAN RENE MOORE may seek enforcement of the judgment for possession of personal property in accordance with Code of Civil Procedure sections 714.010 et seq. The Court will make such further orders as is necessary to effectuate the enforcement of the judgment, including an order for removal of the SSLK Console from 6150 Shenandoah Avenue as it requires professional disassembly.

The Court will reduce the judgment in an amount to be determined by this Court up to $650,000 should Plaintiff receive the return of his property. If KIMBERLY MARTIN-BRAGG returns only a portion of the property or the property is damaged to the extent that it is unusable, Plaintiff may apply to the Court by way of noticed motion for a further Order regarding an offset consistent with the evidence presented at trial and with this judgment.

This judgment is interlocutory due to the bifurcation of pending causes of action unrelated to Plaintiff's personal property. However, the judgment is enforceable.

Dated: November 8, 2013

**MICHELLE R. ROSENBLATT**

Michelle R. Rosenblatt, Judge

# EXHIBIT

# E

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 56

**BC480013**                                                    August 26, 2020
**IVAN RENE MOORE VS KIMBERLY MARTIN-BRAGG**                     8:30 AM

Judge: Honorable Holly J. Fujie          CSR: None
Judicial Assistant: O.Chavez             ERM: None
Courtroom Assistant: B.Chavez            Deputy Sheriff: None

did not set forth a deadline for Defendant to comply with such judgment. Thus, due to the lack of a clear and definite deadline therein, Plaintiff is not in violation of the Court's November 8, 2013 interlocutory judgment by a purported failure to return the property as of this date.

Therefore, Plaintiff's request for contempt to obtain the subject property is not the appropriate procedural mechanism.

Issue No.2: Impossibility

"The facts essential to jurisdiction for a contempt proceeding are (1) the making of the order; (2) knowledge of the order; (3) ability of the respondent to render compliance, [and] (4) willful disobedience of the order." (Application of Liu (1969) 273 Cal.App.2d 135, 140.)

The Court finds that based on Defendant's declaration, there is no possibility that Defendant can comply with the Court's November 8, 2013 judgment. Defendant has clearly declared, under the penalty of perjury, that she no longer possesses any of the property at issue in the November 8, 2013 judgment due to the writ executed by Wells Fargo. Thus, under Liu, there is no basis for this Court to hold Defendant in contempt or order an OSC re: contempt. Plaintiff provides no legal authority to support an argument that inconsistent or contradictory statements in pleadings or affidavits rise to the level of contemptable behavior, or that inconsistent and contradictory statements are per se false and warrant a finding of contempt.

Plaintiff only presents speculative facts in his declaration to support contempt against Defendant. A court, however, is to accept a self-serving declaration filed by a party. (Scalf v. D.B. Log Homes, Inc. (2005) 128 Cal.App.4th 1510, 1521-1522.) Plaintiff has presented no evidence that Defendant is in fact aware that the property at issue is in her garage.

Therefore, the Court DENIES WITH PREJUDICE Plaintiff's renewed motion in its entirety.

Moving party is ordered to give notice of this ruling.

Dated this 26th day of August 2020

HOLLY J. FUJIE

_____
Hon. Holly J. Fujie
Judge of the Superior Court

# EXHIBIT

# F



# EXHIBIT

# G



# EXHIBIT

# H



# EXHIBIT

# I



# EXHIBIT

# J

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

IVAN RENE MOORE,                              ) Case No. BC 480013
                                             )
                                             )
              Plaintiff,                     )
                                             )
                                             ) Special Verdict-Trespass
v.                                           ) to Chattel
                                             )
                                             )
KIMBERLY MARTIN-BRAGG,                       )
              Defendants                     )
_____      )

# FILED

LOS ANGELES SUPERIOR COURT

JUL 2 9 2013

JOHN A. CLARKE, CLERK

*Jeff W. Lipp* ✓
BY JEFF W. LIPP, DEPUTY

We answer the questions submitted to us as follows:

1. Did IVAN RENE MOORE own/possess/have a right to possess any of the following items:

(a) Clothing, shoes, kitchen equipment and other personal property?
_12_ Yes _0_ No

(b) Piano?
_12_ Yes _0_ No

(c) One or more of the following: 2 automobiles, 1 motorcycle, auto tools, auto parts?
_12_ Yes _0_ No

(d) Recording Console SSL K?
_12_ Yes _0_ No

(e) Music, Sound and Recording Equiptment?
_12_ Yes _0_ No

(f) Musical Instruments?
_12_ Yes _0_ No

(g) Business Property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions?
_0_ Yes _12_ No

(i) Masters?
_12_ Yes _0_ No

If your answer to any of the items in question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did KIMBERLY MARTIN-BRAGG intentionally interfere with IVAN RENE MOORE's use or possession of any of IVAN RENE MOORE's property or damage his property ?

_12_ Yes _0_ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here,

Signed: _____
                    Presiding Juror

Dated: 7/29/2013

After all verdict forms have been signed, notify the court attendant that you are ready to present your verdict in the courtroom.

08/02/2013

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

IVAN RENE MOORE,                           ) Case No. BC 480013
                                           )
                                           )
            Plaintiff,                     )
                                           )
                                           ) Special Verdict-Conversion
v.                                         )
                                           )
                                           )
KIMBERLY MARTIN-BRAGG,                     )
            Defendants                     )
_____)

**FILED**
LOS ANGELES SUPERIOR COURT

JUL 2 9 2013

JOHN A. CLARKE, CLERK

*Jeff W. Lipp* ✓

BY JEFF W. LIPP, DEPUTY

We answer the questions submitted to us as follows:

     1. Did IVAN RENE MOORE own/possess/have a right to possess any of the following items:

          (a) Clothing, shoes, kitchen equipment and other personal property?
            12 Yes  0  No

          (b) Piano?
           12 Yes 0  No

          (c) One or more of the following: 2 automobiles, 1 motorcycle, auto tools, auto parts?

           12 Yes 0  No

          (d) Recording Console SSL K?
           12 Yes 0  No

          (e) Music, Sound and Recording Equiptment?
           12 Yes 0  No

          (f) Musical Instruments?
           12 Yes 0 No

          (g) Business Property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions?
           0  Yes 12 No

          (i) Masters?
           12 Yes 0 No

     If your answer to any of the items in question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

     2. Did KIMBERLY MARTIN-BRAGG intentionally interfere with IVAN RENE MOORE's use or possession of any of IVAN RENE MOORE's property or damage his property ?

     12 Yes 0  No

     If your answer to question 2 is yes, then answer question 3. If you answered no, stop here,

answer no further questions, and have the presiding juror sign and date this form.

    3. Did IVAN RENE MOORE consent?

    **0** Yes  **12** No

    If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

    4. Was IVAN RENE MOORE harmed?

    **12** Yes  **0** No

    If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

    5. Was KIMBERLY MARTIN-BRAGG's conduct a substantial factor in causing IVAN RENE MOORE's harm?

    **12** Yes  **0** No

    If your answer to question 5 is yes, then answer question 6 and 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

    6. What are IVAN RENE MOORE's damages?
                                       a. For the fair market value of the property:

    $ **2.5 million**
    **($2,500,000)**

    7. Do you recommend that the Court order KIMBERLY MARTIN-BRAGG to return any of the items checked yes in Question 1 to IVAN RENE MOORE instead of awarding some or all of the damages in 6a?
            **12** Yes  **0** No

    8. If your answer to question 7 is yes, which items do you recommend the Court order to be returned (enter the letter(s) or print the name of the item(s))?
    **Clothing, shoes, kitchen equipment personal property, piano, SSLK console, music/sound/recording equipment, musical instruments, masters, '71 Camarro**
            If your answer to question 7 is yes and the Court follows your **legal documents**
    recommendation, then answer question 9.  If your answer is no, stop here, answer no further question
    and have the presiding juror sign and date this form.

    9. If the property listed in question 8 is returned to IVAN RENE MOORE, by what amount, if any, should the damages be reduced?          $ **2.5 million**

Signed: _____
                 Presiding Juror

Dated: 7/29/2013

After all verdict forms have been signed, notify the court attendant that you are ready to present your verdict in the courtroom.

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

IVAN RENE MOORE,                                    ) Case No. BC 480013
                                                    )
                                                    )
                    Plaintiff,                      )
                                                    )
                                                    ) Special Verdict-Conversion
v.                                                  )
                                                    )
                                                    )
KIMBERLY MARTIN-BRAGG,                              )
                    Defendants                      )
_____            )

**FILED**
LOS ANGELES SUPERIOR COURT

JUL 2 9 2013

JOHN A. CLARKE, CLERK

*Jeff W. Lipp* ✓
BY JEFF W. LIPP, DEPUTY

08/02/2013

We answer the questions submitted to us as follows:

      1. Did IVAN RENE MOORE own/possess/have a right to possess any of the following items:

            (a) Clothing, shoes, kitchen equipment and other personal property?
            12 Yes  0  No

            (b) Piano?
            12 Yes 0  No

            (c) One or more of the following: 2 automobiles, 1 motorcycle, auto tools, auto parts?

            12 Yes 0  No

            (d) Recording Console SSL K?
            12 Yes 0  No

            (e) Music, Sound and Recording Equiptment?
            12 Yes 0  No

            (f) Musical Instruments?
            12 Yes 0 No

            (g) Business Property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions?
            0   Yes 12 No

            (i) Masters?
            12 Yes 0 No

      If your answer to any of the items in question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

      2. Did KIMBERLY MARTIN-BRAGG intentionally and substantially interfere with any of IVAN RENE MOORE's property by [[taking possession of/preventing IVAN RENE MOORE from having access to, or destroying, or refusing to return] any of items to chich you checked "yes" in question 1 after IVAN RENE MOORE demanded its return]?

      12 Yes  0  No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did IVAN RENE MOORE consent?

___0___ Yes ___12___ No

If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was IVAN RENE MOORE harmed?

___12___ Yes ___0___ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Was KIMBERLY MARTIN-BRAGG's conduct a substantial factor in causing IVAN RENE MOORE's harm?

___12___ Yes ___0___ No

If your answer to question 5 is yes, then answer question 6 and 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are IVAN RENE MOORE's damages?

a. For the fair market value of the property:

$ 2.5 million
(2,500,000)

b. For lost profits:

$ 650,000

TOTAL $ 3,150,000

7. Do you recommend that the Court order KIMBERLY MARTIN-BRAGG to return any of the items checked yes in Question 1 to IVAN RENE MOORE instead of awarding some or all of the damages in 6a?

___12___ Yes ___0___ No

8. If your answer to question 7 is yes, which items do you recommend the Court order to be returned (enter the letter(s) or print the name of the item(s))?

Clothing, shoes, Kitchen equipment, personal property, piano, SSLK console, music/sound/recording equipment, musical instruments, masters, '71 Camaro personal document

If your answer to question 7 is yes and the Court follows your recommendation, then answer question 9. If your answer is no, stop here, answer no further question

and have the presiding juror sign and date this form.

        9. If the property listed in question 8 is returned to IVAN RENE MOORE, by what amount, if any, should the damages be reduced?   $ _2.5 million_

Signed: _____
           Presiding Juror

Dated: 7/29/2013

    After all verdict forms have been signed, notify the court attendant that you are ready to present your verdict in the courtroom.

# EXHIBIT

# K

RULING
JUDGE DAVID J. COWAN
DEPARTMENT 1

| | |
|---|---|
| Date: | Tuesday, December 21, 2021 |
| Case Number: | BC480013 |
| Case Name: | *Ivan Renee Moore v. Kimberly Martin-Bragg* |
| Moving Party: | Kimberly Bragg |
| Responding Party: | Ivan Rene Moore |
| Ex Parte Application: | Recall Writ of Execution and Cancel Abstract of Judgment |

Ruling:          **The Application is GRANTED AS STATED HEREIN. Enforcement of the Writ of Execution is stayed pending a final determination of whether the Final Judgment was discharged during Bragg's bankruptcy proceedings. The Application is otherwise DENIED WITHOUT PREJUDICE.**

## BACKGROUND

On November 8, 2013, following a jury trial, the Court entered an interlocutory judgment in favor of Ivan Renee Moore and against Kimberly Bragg for $3.15 million, finding Bragg liable for conversion and trespass to chattels in taking Moore's personal property after an eviction. The interlocutory judgment required Bragg to return certain property to Moore with reductions in the damages Bragg must pay based on the property returned.

On May 23, 2016, the civil court entered a Final Judgment incorporating and superseding the interlocutory judgment.

On September 28, 2016, Bragg filed for Chapter 7 bankruptcy.

On January 9, 2017, the bankruptcy court issued an order discharging Bragg's debts "under 11 U.S.C. [sec.] 727." (RFJN, Exh. 6.)[1]

---

[1] The Court grants Bragg's unopposed requests for judicial notice of several court filings and orders, including orders of the. U.S. Bankruptcy Court for the Central District of California in case no. 2:16-bk-22878-BR, Bragg's Chapter 7 bankruptcy proceeding.

On September 27, 2021, Moore obtained a Writ of Execution for $3.15 million based on the Final Judgment.

On November 16, 2021, Moore obtained an abstract of judgment. (RFJN, Exh. 12.)

On November 24, 2021, Moore recorded the abstract of judgment, which "may constitute a lien against" 6150/6160 Shenandoah Avenue, Los Angeles, CA 90056. (RFJN, Exh. 13.)

On December 14, 2021, Kimberly Bragg filed an Ex Parte Application to Recall Writ of Execution and Cancel Abstract of Judgment.

On December 16, 2021, Ivan Renee Moore filed an Opposition to the Ex Parte Application.

## DISCUSSION

Bragg seeks to recall and cancel the Writ of Execution issued September 27, 2021 and abstract of judgment issued November 16, 2021 on the grounds that both are based on the Final Judgment purportedly discharged by the bankruptcy court on January 7, 2021. Bragg contends emergency relief is warranted because the cloud resulting from the recordation of the abstract of judgment will impact the refinancing of her home if not cleared. (See CCP sec. 697.310(a) ("Except as otherwise provided by statute, a judgment lien on real property is created under this section by recording an abstract of a money judgment with the county recorder.")) Bragg alleges her "loan cannot close" and she "will lose [her] rate lock and suffer substantial monetary damages" if the lien is not cleared "immediately." (Bragg Decl., para. 7.) Bragg also contends she is at immediate risk of invalid collection from Moore pursuant to the live Writ of Execution. Bragg alleges emergency relief is necessary to avoid losing her "rate lock" for her refinancing and to avoid collection under the Writ of Execution.

2

Bragg has not established exigent circumstances with respect to her alleged refinancing. (CRC 3.1202(c) ("An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte.")) Bragg's Declaration is vague regarding the specific property at issue, the rate lock, the extent of monetary damages suffered if the rate is lost, or any other relevant details. Moreover, there is no supporting evidence showing that Bragg has a rate lock or that the rate lock is "immediately" threatened by the lien from the recordation of the abstract of judgment (e.g., a letter from the lender on this subject). Bragg has not made an affirmative factual showing of irreparable harm or immediate danger from the abstract of judgment. However, the risk of Moore levying on Bragg's assets under a potentially invalid Writ of Execution represents an immediate danger to Bragg. Thus, the Court reaches the merits of the Application with respect to the Writ of Execution.

On January 9, 2017, the bankruptcy court granted Bragg a "discharge under 11 U.S.C. [sec.] 727." (RFJN, Exh. 2; 11 U.S.C. sec. 727(b) (Except as provided in section 523 of this title, a discharge under . . . this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter...")) However, a "discharge under section 727 . . . does not discharge an individual debtor" from certain types of debts enumerated in 11 U.S.C. sec. 523(a). In particular, a discharge under section 727 does not discharge an individual debtor's debts "for willful and malicious injury by the debtor to another entity or to the property of another entity," among other exceptions. (11 U.S.C. sec. 523(a)(6).)

Following Bragg's discharge, Moore filed an adversary proceeding in bankruptcy court arguing that "the judgment in LASC case number BC480013 is NONDISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. [sec.] 523(a)(2), (4), (6) and (11))." (RFJN, Exh. 6 (Adversary

Proceeding Complaint, para. 78.)) The bankruptcy court "dismiss[ed] the adversary proceeding with prejudice due to [Moore's] failure to pay the sanctions" of $13,000 due under a sanctions order, without addressing Moore's arguments under Section 523. (RFJN, Exh. 6 (11/17/17 Order.))

Bragg's Ex Parte Application does not address Section 523(a) at any point. This argument is not new to Bragg and is reiterated in Moore's Opposition to the Application. Given that the Final Judgment followed a jury verdict finding Bragg liable for conversion and trespass to chattels in the amount of $3.15 million based on allegations that Bragg took Moore's property after evicting him, the Final Judgment may represent a debt for Bragg's "willful and malicious injury . . . to the property of another entity." (11 U.S.C. sec. 523(a)(6).) Bragg does not argue the dismissal of Moore's adversary proceeding constituted a determination that the Final Judgment was discharged. On the other hand, Judge Fujie found on December 1, 2021 that "the Money Judgment evidenced in the Final Judgment was itself discharged in Defendant's bankruptcy proceeding," indicating that the discharge may have encompassed Moore's judgment.

Bragg's Ex Parte Application provides insufficient grounds for Department 1 to determine on an ex parte basis that the bankruptcy court's January 9, 2017 order discharging Bragg's debts encompassed the Final Judgment (or its monetary component). There is no evidence that any judge has yet addressed whether the Final Judgment falls under Section 523(a)(6). However, the dismissal of Moore's adversary proceeding *with prejudice* and Judge Fujie's December 1, 2021 Order indicate the Final Judgment was indeed discharged. This critical issue goes to the validity of a $3.15 million judgment at the heart of this litigation and is much better-suited to determination by a fully noticed motion before Judge Fujie rather than an ex parte application before Department 1, particularly where Judge Fujie may already have some familiarity with the issue.

4

Finally, it is unclear what statutory mechanism or authority Bragg relies upon to seek cancellation or recall of the recorded Abstract of Judgment and resulting lien. (See CPP sec. 697.310, *et seq.* (statutory scheme for judgment liens on real property)) It is thus unclear from the Application that the Court can grant the requested relief with respect to the Abstract of Judgment and/or the lien.

Hence, the Court declines to now discharge, cancel, or recall the Abstract of Judgment and Writ of Execution. Instead, in order to maintain the status quo pending determination of this issue and to avert any immediate danger to Bragg from the Writ of Execution, the Court stays enforcement of the Writ of Execution pending further order. Moore is not permitted to levy on Bragg's assets pursuant to the Writ of Execution pending a final determination of whether the monetary component of the Final Judgment was discharged by the bankruptcy court. The Application is otherwise DENIED WITHOUT PREJUDICE.